Thomas **FORAKER**, et al., Plaintiffs,

v.

The **CYCLOPS CORPORATION**, et al., **Defendants.**

No. C78–1542–Y.

United States District Court,
N.D. Ohio, E.D.

Jan. 16, 1985.

**642**

John A. McNally, III, Youngstown, Ohio, for plaintiffs.

Wm. Wallace, Brett K. Bacon, Thompson, Hine & Flory, Louis Paisley, Weston, Hurd, Fallon, Paisley & Howley, James T. Millican, Timothy G. Kasparek, Reminger & Reminger, Cleveland, Ohio, for defendants.

### MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

Before the Court is Defendant Cyclops Corporation's Motion for Summary Judgment filed on March 2, 1984.[1] This Court

---

**1.** Plaintiff Foraker submitted an amended motion for summary judgment on April 19, 1984. However, in its Memorandum Opinion and Order of March 19, 1984, this Court denied plaintiff's original motion for summary judgment. This Court finds no significant difference between the original summary judgment motion it previously denied and the amended motion plaintiff submitted; whatever "amendments" plaintiff has made are simply responses to defendant's summary judgment motion. No additional facts or changes in applicable law that

has previously denied plaintiff Foraker's motion for summary judgment as well as defendant J.J. Baghouse's motion for summary judgment against defendant third party plaintiff, Cyclops Corporation. This Court now denies defendant Cyclops Corporation's summary judgment motion.

## I.

Although this Court has previously stated the facts in this case, it is necessary at this time to give a more detailed presentation of the relevant events. The parties do not dispute the facts of this case; hence, the issue before this Court on summary judgment is whether defendant Cyclops Corporation (hereinafter "Cyclops") should prevail as a matter of law. The facts of this case are therefore as follows:

On September 16, 1978, plaintiff Thomas Foraker, an employee of J. & J. Baghouse Maintenance, Inc. (hereinafter "J. & J. Baghouse" or "Baghouse"), was severely burned at Cyclops' Sharon, Pennsylvania factory. The Pennsylvania factory is part of the Sawhill Tubular division of Cyclops Corporation and manufactures piping. Foraker was working in and cleaning an environmental control device known as a zinc dust collector. The zinc dust collector is a large, enclosed v-shaped bin, accessible by ladder and adjacent to the factory, which collects zinc particles generated in the manufacture of Cyclops' pipe. The dust collector was manufactured and sold to Cyclops by defendant Mikropul Division of United States Filter Corporation (hereinafter "Mikropul").

Plaintiff Foraker was working inside zinc dust collector No. 2 pursuant to an agreement between Baghouse and Cyclops wherein Baghouse, an independent contractor, would clean the dust collector. When plaintiff arrived to begin cleaning work on the dust collector, he found the lighting inadequate. It is uncontroverted that day-light is not adequate to illuminate the baghouse and that no lighting system was in place on September 16, 1984 inside the baghouse. Needing more light to perform his work, he set up a "trouble light" which was connected to a power source by a long extension cord. Plaintiff had been warned to use only a flashlight and no other light source. Nonetheless, plaintiff discovered the light bulb in the electric extension light was burned out. He asked a Cyclops employee at the Cyclops supply counter for a light bulb; he received the bulb.

The bulb Foraker received was too large to fit in the trouble light so plaintiff removed the light's protective cover and installed the bulb. Plaintiff began cleaning the dust collector. During the course of his work, plaintiff observed the light bulb fall from the trouble light and break. The breaking of the bulb sparked a fire and a subsequent explosion of the highly flammable zinc particles in the dust collector. Plaintiff was critically burned on his hands, face, arms and legs and was permanently disabled.

Prior to September 16, 1978, three fires had occurred at dust collector No. 2 at Cyclops' Sharon, Pennsylvania factory. Although the zinc collector was not equipped with a sprinkler system when sold to Cyclops, Cyclops installed a sprinkler after the first fire; the sprinkler was manufactured by defendant Automatic Sprinkler Corporation of America. However, on the date of the fire, September 16, 1978, the sprinkler system did not activate during the time plaintiff was being burned and before he had escaped the collector. People had been injured and burned in at least two of the three fires prior to September 16, 1978.

In a document dated June 5, 1978, three months and eleven days before the September 16, 1978 fire, Baghouse requested that

have arisen since plaintiff's original summary judgment motion was denied are presented in the amended motion. This Court, however, need not rule on plaintiff's amended motion for summary judgment because it was subsequently withdrawn by plaintiff. At the oral argument on defendant's summary judgment motion, plaintiff's attorney John A. McNally stipulated that he was withdrawing the resubmitted summary judgment motion. Transcript of Proceedings on November 1, 1984, at 29.

Cyclops furnish explosion proof light bulbs or bulb covers. Cyclops did not meet this request.

Plaintiff filed his First Amended Complaint on August 22, 1979. This Court's jurisdiction arises under 28 U.S.C. § 1332(a) (diversity of citizenship). Plaintiff Thomas Foraker and his wife, plaintiff Candace Foraker, are both residents of Ohio. Cyclops Corporation is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania. Mikropul Corporation is a New Jersey corporation. Third-party defendant J.J. Baghouse is an Ohio Corporation.

## II.

### CHOICE OF LAW

■ Before rendering its decision on Defendant Cyclops' summary judgment motion, this Court must determine which state's law it will apply. Although the choice of law determination is normally anterior to ruling on a summary judgment motion, it is particularly important in the instant case when the question is who should prevail *as a matter of law*.[2]

■ It is well established that a federal court that takes jurisdiction of a case solely on the basis of diversity of citizenship between the parties must follow the conflict of law rules of the state in which it is sitting. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Ohio, the substantive law of the *locus delicti* (the place of the injury) is used unless there are compelling governmental interests to the contrary. *Lake v. Richardson-Merrell, Inc.*, 538 F.Supp. 262 (1982) (Battisti, C.J.); *see also* 16 O.Jur.3d *Conflict of Laws* § 42 (1984).

Defendant Cyclops argues that although the locus delecti is in Pennsylvania, the State of Ohio has greater governmental interests in this action and that, as a result,

Ohio law should apply. Defendant cites the following factors as a basis for Ohio's significant interest. (1) Plaintiff Foraker and his employer, J.J. Baghouse, are both citizens of Ohio; (2) Plaintiff is receiving worker's compensation from the state of Ohio; Ohio therefore has an interest in Plaintiff's compensation; (3) Ohio has an interest in seeing J.J. Baghouse comply with Ohio's safe workplace laws, particularly with regard to Ohio employees; and (4) Plaintiff has chosen to bring his suit in Ohio. At the same time, Defendant asserts Pennsylvania has an insignificant if non-existent governmental interest in the compensation of an injured employee of an Ohio independent contractor.

Plaintiff, on the other hand, denies that Ohio has an interest in seeing its safe workplace laws adhered to when the injury occurs outside of the state. Plaintiff specifically cites Ohio Revised Code section 4101.03 as limiting Ohio's jurisdiction (and presumably its area of legitimate governmental interest) to workplaces in the state of Ohio. Plaintiffs do not address the issue of Ohio's interest in Foraker's receipt as an Ohio citizen fair and adequate compensation wherever the injury might occur.

It is instructive to examine the cases cited by the parties in their briefs on this conflict of law issue to determine when a state does have a significant governmental interest. In *Fox v. Morrison Motor Freight*, 25 Ohio St.2d 193, 267 N.E.2d 405 (1971), an Ohio resident was killed in Illinois in an accident with a tractor-trailer driven by an employee of an Ohio corporation. Defendants confessed liability so the only issue before the Ohio Supreme Court was whether Ohio or Illinois law should apply in limiting the amount of damages recoverable. In abandoning the *automatic* application of *locus lex delicti*, the Ohio Supreme Court undertook a weighing of governmental interests. However, the Court found no true conflict of laws prob-

---

**2.** Plaintiffs' counsel and Defendant Cyclops' counsel have minimized the actual significance of the choice of law, saying in oral argument on November 1, 1984 that they believe they will each prevail no matter which law is picked.

However, to the degree the rationale of the states differ, it is important that this Court cite with precision the state law and cases on which it is relying.

lem in that case because "Illinois has no interest in the litigation." The Court reasoned that because defendant had admitted liability for negligence, defendant had in effect "remov[ed] from consideration any conflict concerning the conduct required of motorists by Illinois traffic laws." 25 Ohio St.2d at 198, 267 N.E.2d at 407. The Court specifically stated that if liability were still an issue ("an issue ... concerning the driving conduct of the parties within the state where the accident occurred"), then Illinois would still have a substantial interest in the case. *Id.* Illinois would also have an interest worthy of consideration if the defendant were an Illinois corporation. 25 Ohio St.2d at 196, 267 N.E.2d at 407. In the absence of these facts, with an Ohio plaintiff and an Ohio defendant, the Ohio Supreme Court ruled that Ohio had all the governmental interests, both for "the fair and adequate compensation for the next of kin of an Ohio resident killed by a wrongdoer and the lawful administration of the decedent's estate." 25 Ohio St.2d at 198, 267 N.E.2d at 408.

The instant case is more like the exceptions discussed in *Fox* than like the fact situation in *Fox* itself; there is a true conflict of law present here. In this case, the issue of liability remains contested. Furthermore, there is an Ohio plaintiff and a Pennsylvania defendant with the accident occurring in Pennsylvania. Hence, there is an issue remaining about the conduct of the parties in the state where the accident occurred. Thus, Pennsylvania does have an interest in this matter. The question remains whether this interest is sufficient for Pennsylvania law to prevail over any interests Ohio may have.[3]

In *Schlitz v. Meyer*, 29 Ohio St.2d 169, 280 N.E.2d 925 (1972), a Kentucky plaintiff sued a Kentucky defendant in an Ohio court for a collision that occurred in Ohio. The Ohio Supreme Court chose Ohio law, giving special consideration to the forum plaintiff had selected. Because plaintiffs had brought their action in Ohio rather than Kentucky, the Court stated plaintiffs "have increased our governmental interest beyond that of merely being the state in which the accident occurred. We now have the additional interest of advancing, in our courts, those policies which our General Assembly has seen fit to maintain in this area of tort law." *Id.* at 172, 280 N.E.2d at 927.

In the instant case, plaintiffs did bring their action in a federal court in Ohio rather than in Pennsylvania, the state of the *locus delicti*. In this sense, as stated in *Schlitz*, they have increased Ohio's interest in the case by filing here rather than in Pennsylvania. However, this Court is reluctant to place too much emphasis on this choice of forum in the instant case: plaintiff, who is an Ohio resident, has simply filed this action in the most convenient local forum. There is no evidence that plaintiff has been forum shopping. The Court is therefore averse to holding the reasonable and predictable act of filing in his home state against plaintiff when it comes to choice of law. To create such a rule would have the effect of making plaintiff's counsel consider and calculate the choice of law rules of a particular state before bringing an action in federal court. Such a result would not only be wasteful of counsel's time but would have the effect of deterring access to the federal courts in the most natural and convenient location, the plaintiff's state of residence.[4] Hence, Ohio

---

3. In *Moats v. Metropolitan Bank of Lima,* 40 Ohio St.2d 47, 319 N.E.2d 603 (1974), an Ohio resident was killed in an airplane crash which occurred in Pennsylvania with a plane owned and flown by an Ohio resident. Citing these facts and Ohio's legislative policy concerning aircraft injuries as stated in O.R.C. § 4561.151, the Ohio Supreme Court found Ohio law applicable.

4. Certainly the choice of forum may be accorded more weight if plaintiff selects a forum other than that of his state of residence. For example, in *Moat,* Kentucky residents filed in an Ohio court. Similarly in *Lake v. Richardson-Merrell, Inc.,* 538 F.Supp. 262 (1982), Canadian mothers sued in a federal court in Ohio. The fact that a plaintiff has decided to go to another state to bring an action warrants holding him to the consequences of his decision as it affects the law to be applied.

has an interest in this litigation in effecting its legislative policy on tortious conduct as a consequence of plaintiff's filing here but this interest is not determinative.

*Lavine v. General Mills, Inc.*, 519 F.Supp. 332 (D.C.Georgia 1981) cannot be read for the proposition that plaintiff's failure to cite Pennsylvania authority in previous motions compels this Court to apply Ohio law. In *Lavine*, a Georgia plaintiff sued a non-Georgian tour package company for injuries she sustained during a tour in the Fiji Islands. Although Georgia would normally apply the conflict of doctrine *lex loci delicto*, "the parties agree[d] that Georgia law should apply in this case due to the insurmountable difficulty in obtaining Fiji authority." *Id.* at 335. Because of this difficulty, the court stated "since neither party has come forward to prove the applicable Fiji law," Georgia law would apply. *Id.* Similarly, in *Commercial Insurance Company v. Pacific-Peru Construction Corp.*, 558 F.2d 948 (9th Cir.1977), a New Jersey company sued a Hawaiian corporation regarding an indemnity agreement covering a Peruvian construction job; the suit was brought in federal district court in Hawaii. Since Hawaii had no conflicts of laws rules, the Ninth Circuit applied general choice of law principles as given in the Restatement (Second) on Conflicts of Laws. Since neither party has raised Peruvian law, the court cited the Restatement.

> [W]here either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law.... When both parties have failed to prove the foreign law, the forum may say that the parties have acquiesced in the application of the local law of the forum.

*Id.* at 952.

Essentially, both *Lavine* and *Commercial Insurance* are difference from the instant case. In both those cases, the law of the *locus delicti* was that of foreign countries; in both cases the court and the parties agreed that the use of the forum's law outweighed the difficulty of obtaining the foreign country's law. It is therefore not surprising that local law was used and the parties did not object to its use. Furthermore, in the instant case, once this Court raised the choice of law issue in its July 17, 1984 Order, plaintiff's counsel did state reasons for the applicability of Pennsylvania law.

■ Having examined several of the factors cited by the parties, this Court now turns to the fact that plaintiff is receiving Ohio worker's compensation. Plaintiff contends in his Supplemental Brief on the Conflict of Law Issue at 2 that the Ohio Revised Code "specifically limits the jurisdiction of the Department of Industrial Relations to places of employment *in this state* [of Ohio]" [emphasis in original]. Plaintiff's argument, though not clearly stated, seems to be that since the Department of Industrial Relations has jurisdiction only in Ohio, Ohio has no interest in its safe work place laws when the injury occurs in Pennsylvania. The proper inquiry though is not the language of the statute conferring jurisdiction on the Department of Industrial Relations but rather the availability of workers' compensation to the plaintiff. Ohio Revised Code section 4123.54 states that "[e]very employee, who is injured ..., *wherever such injury has occurred* ..., is entitled to receive ... such compensation for loss sustained on account of such injury ... and such medical [expenses, etc.] ... as provided by sections 4123.01 to 4123.94 of the Revised Code." Not only does the statute provide for compensation to workers injured outside the state but Ohio courts have consistently awarded benefits to employees who as "an incident to their employment ... are sent beyond the borders of the state." *Industrial Commission of Ohio v. Gardinio*, 119 Ohio St. 539, 164 N.E. 758, 759 (1929). This Court need not deal at length with whether Ohio's workers compensation laws are available to plaintiff: it is already a matter of record that plaintiff did *indeed* receive Ohio workers' compensation benefits. The fact that Ohio is paying benefits gives it a significant interest in this case, both to see that plain-

tiff is not overcompensated and that his interests and that of the state of Ohio in a safe workplace are protected.

However, since choice of law grows out of a respect for comity and full faith and credit clause of the Constitution as well as a consideration of local policy, *see Klaxon,* 313 U.S. at 497–98, 61 S.Ct. at 1022, this Court can in fairness look at what Pennsylvania would do in a similar situation. In *Lewis v. Chemetron Corp.,* 448 F.Supp. 211 (W.D.Pa.1978), the United States District Court for the Western District of Pennsylvania entertained a tort suit brought by a Pennsylvania truck driver working for a Pennsylvania company against a Delaware corporation; at the time of the accident, the plaintiff was employed at an Ohio facility owned by the Pennsylvania employer. Plaintiff received Ohio workmen's compensation benefits. In dismissing the third-party complaint against plaintiff's employer, the Court chose Ohio law. Citing the cases of *Elston v. Industrial Lift Truck,* 420 Pa. 97, 216 A.2d 318 (1966) and *Madrin v. Wareham,* 344 F.Supp. 166 (W.D.Pa.1972), the court in *Lewis* wrote:

> After discussing the legal policies underlying the conflicting legal rules...., the court [in *Elston*] determined that the receipt of workmen's compensation benefits through the offices of a particular state gave that state an overriding interest of controlling importance with respect to the choice of law question.

448 F.Supp. at 213.

The *Lewis* Court felt compelled by the fact that plaintiff had received Ohio workmen's compensation benefits "to apply the law of Ohio." *Id.*

■ This Court is aware that Pennsylvania's choice of law rules do not give priority to the locus delicti as does Ohio's. Nonetheless, the fact that Pennsylvania identifies the receipt of Ohio workmen's compensation as implicating Ohio's significant governmental interest makes this Court pause; if plaintiff had filed this action in Pennsylvania, the district court there would have applied Ohio law. Thus

this Court does not fear that it is violating the "policies of the forum," the "justified expectations" of the parties, "the basic policies underlying [this] particular field of law" or "the certainty, predicatability and uniformity of the result" in selecting Ohio law. Ohio has a compelling interest in this action which overcomes that of the locus delecti, the state of Pennsylvania and therefore Ohio law should apply. *See* Restatement (second) of Conflict of Laws § 6(2) (1971). In examining the tort law of both states, both are interested in protecting the safety of independent contractors while at the same time not imposing an unreasonable duty on land-owners to protect contractors against potential harm. Although the parties disagree as to the extent of that duty, this Court need not go into a full-scale examination of the provisions of each state's law. This Court believes the choice of Ohio law will promote prudent conduct by both landowners and independent contractors without substantial intereference in Pennsylvania's law.

## II.

### SUMMARY JUDGMENT

Having decided that Ohio law governs in this action, the Court now turns to whether defendants are entitled to summary judgment. Summary judgment is appropriate when the issues in a case involve no more than the application of legal principles to undisputed facts. *Choate v. Landis Tool Co.,* 486 F.Supp. 774 (E.D.Mich.1980). In essence, defendants contend that they owed no duty to the independent contractor J.J. Baghouse who, Cyclops claims, was fully aware of the dangerous condition in the zinc dust collector.

■ To establish "actionable negligence," a plaintiff must show:

(1) a duty, or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

(2) a failure on his part to conform to the standard required. These two elements

[ (1) & (2) ] go to make up what the courts usually have called negligence; but the term quite frequently is applied to the second alone. Thus it may be said that the defendant was negligent, but is not liable because he was under no duty to the plaintiff not to be.

(3) A reasonable close causal connection between conduct and the resulting injury. This is what is commonly known as "legal cause," or "proximate cause."

(4) Actual loss or damage resulting to the interests of another....

W. Prosser, *Law of Torts* 143 (4th ed. 1974); *see also Wellman v. East Ohio Gas Co.*, 160 Ohio St. 103, 108–09, 113 N.E.2d 629 (1953). Defendant Cyclops contends that as a matter of law it owed no special duty to protect plaintiff from the injuries he sustained as an independent contractor and that therefore plaintiff will be unable to make the showing in item 1 above.

In determining if such a duty exists, it is instructive to examine the cases in Ohio which have established the duties and relationship between independent contractors and employers or landowners, paying particular attention to the fact situations therein.

In *Wellman v. East Ohio Gas Co.*, 160 Ohio St. 103, 113 N.E.2d 629 (1953), the Ohio Supreme Court ruled that "[o]ne who engages in independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance." (Headnote 2 of the Syllabus). In *Wellman*, the plaintiff was the employee of an independent contractor responsible for laying a gas line for defendant, a city gas company. The defendant had inspectors at the job site to ensure the work was done to its specifications. In the process of removing a cap from the gas pipe (which incidentally was improperly removed by another of the independent contractor's employees), the cap blew off under pressure and struck plaintiff and fractured one of his legs. The

Ohio Supreme Court found that since the independent contractor was aware of the danger in laying the gas pipe, "it was the [independent contractor's] duty to warn and protect the plaintiff, and no such duty devolved on defendant." *Id.* at 107, 113 N.E.2d at 632. The Court added that the "rule of general acceptance is that where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees' is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor." *Id.* at 108, 113 N.E.2d at 632. The *Wellman* rule has been affirmed by the Court since 1953. *See Briere v. Lathrop Co.*, 22 Ohio St.2d 166, 258 N.E.2d 597 (1970); *Evans v. Whirlpool Corp.*, 10 Ohio St.2d 240, 227 N.E.2d 208 (1967); *Schwarz v. General Electric Realty Corp.*, 163 Ohio St. 354, 126 N.E.2d 906 (1955).

In *Millhouse v. General Tire and Rubber Co.*, 9 Ohio App.3d 203, 9 Ohio Official Reports 203, 459 N.E.2d 623 (Cuyahoga County Ct.App.1982), the court upheld the *Wellman* rule and the principle of *Schwarz and Evans v. Whirlpool Corp.*, 10 Ohio St.2d 240, 126 N.E.2d 906, 39 O.O.2d 372 (1967) that a landowner discharges his duty once he notifies the independent contractor (but not each of the individual employees) of potential hazards on the property. In *Millhouse*, General Tire and Rubber Co. (GT & R) had hired independent contractor Mobile Wash to clean a tank car containing a toxic chemical. Plaintiff Millhouse was an employee of Mobile Wash. Although the depositions indicated that GT & R had notified the independent contractor of the presence of dangerous gas in the car, employee Millhouse failed to wear a mask, independent-breathing source, wristlets or safety line which were all required by company safety procedures. The employee was found unconscious and subsequently died from exposure to the toxic chemical. The Court of Appeals affirmed the grant of summary judgment for defendant GT & R.

The first significant development or modification of the *Wellman* rule came in *Hirschbach v. Cincinnati Gas & Electric Co.*, 6 Ohio St.3d 206, 452 N.E.2d 326 (1983). The syllabus in that case held that "[o]ne who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." Plaintiff Hirschbach was an employee of the Wagner-Smith Company, an independent contractor, which was to replace electrical wire conductors for the Cincinnati Gas & Electric Co. (hereinafter referred to as "CG & E"). In the process of replacing one of the conductors, plaintiff had to climb the arm of a high tension electric tower owned by CG & E. The tower arm collapsed and plaintiff was killed by the fall. It was found that the arm's collapse was due to a Wagner-Smith winch line which was attached to the arm and that the winch tractor was positioned closer to the tower than was considered safe. Prior to the accident, the plaintiff and his fellow employees had asked the CG & E inspector at the Site whether they could move the winch tractor to a safe distance. Because CG & E did not want to be responsible for the expenses and potential liability of moving the winch tractor, it refused the CG & E request.

The *Hirschbach* Court found that "the controlling and dispositive factual distinction" in the case which made the *Wellman*

rule inapplicable was that [CG & E] actually participated in the job operation performed by the crew of the independent contractor.... By denying the Wagner-Smith crew its request to reposition the winch tractor: (1) CG & E refused to eliminate the hazard, (2) CG & E interfered with the mode of the job operation, and (3) CG & E actually participated in the job operation by dictating the manner and mode in which the winching phase of the job was to be performed. *Id.* at 208, 452 N.E.2d 326. The court found that a jury question remained as to whether CG & E was responsible for decedent's death by failing to eliminate a hazard which in the exercise of ordinary care it could have eliminated. The Court therefore denied defendant CG & E's summary judgment motion.

*Hirschbach* figured prominently in the recent decision of *Walker v. Mid-States Terminal, Inc.*, C.A. No. L–83–278, slip op. (Lucas County Ct.App. March 9, 1984). In *Walker*, the plaintiff was a construction worker for the independent contractor Stout Construction Company which was building grain silos for defendant Mid-States. Plaintiff died when the material hoist he was using collapsed. The independent contractor was responsible for modifying a material hoist (instead of using a personnel hoist) which was in violation of Stout's own policy prohibiting the use of material hoists. The *Walker* court found that the presence of an inspector, as in *Hirschbach*, was sufficient to invoke the applicability of Ohio's "frequenter statutes" *see* Ohio Rev.Code Ann. § 4101.11 et seq. (Page 1980)[5] Since defendant Mid-

5. Ohio Revised Code § 4101.11 reads in pertinent part:

Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

Ohio Revised Code § 4101.12 reads in pertinent part:

No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall con-

States had retained custody and control over the premises as well as maintained by contract its right to inspect or test the work and materials of the independent contractor, the court concluded that a jury question remained "as to whether, by the reasonable exercise of the rights retained by Mid-States by virtue of its contract with Stout, Mid-States could have discovered and eliminated the hazard which caused the tragic death of one employee and the permanent disablement of another." Therefore, the Court denied defendant employer Mid-States summary judgment motion.

Most recently, the Ohio Court of Appeals for the Eighth Appellate District in *Cafferkey v. Turner Construction Co.*, Nos. 47743, 48125, slip op. (Ohio Ct.App. Aug. 30, 1984) affirmed a summary judgment granted to an employer general contractor who had been sued by an independent contractor. In the case, the defendant general contractor was constructing a high-rise commercial building. The independent contractor or subcontractor was to drill "pier holes" which would support the building once filled with concrete. Both the general contractor and independent contractor knew that in drilling pier holes there was the likelihood of methane gas trapped underground exploding. Plaintiff was an employee of the independent contractor; plaintiff was lowered into the hole to disengage a "twisting device" jammed into the hole. An explosion and fire occurred when plaintiffs lit the acetylete torch (which ig-

nited the methane) that they were using to cut the jammed twisting device.

Judge Richard Markus writing for the majority did not question the *Hirschbach* decision. Instead, he distinguished the fact situation in *Cafferkey* from *Hirschbach:* "Unlike the landowner in *Hirschbach,* this defendant neither gave nor denied permission for the critical acts which led to the decedents injuries." Although the court noted that the general contractor's supervisors knew about the potential hazard, it found that all the duties regarding excavation had by contract been accepted by the independent contractor. Indeed, Judge Pryatel in his concurring opinion notes that the general contractor's supervisor had left the construction site before the accident and "had been ordered by [the independent contractor] to leave the vicinity of the caisson drilling." Since the general contractor's personnel were not consulted nor asked about the procedure to untangle the jammed casing nor did they interfere with the procedure, the *Cafferkey* court found that "the general contractor's acts or knowledge did not constitute 'actual participation'[6] in those activities within the *Hirschbach* rule.... Consequently, the general contractor was not liable for injury from inherent risks accepted by the subcontractor, even if the general contractor might have acted to minimize those risks." The court affirmed the summary judgment granted to defendant general contractor.

■ The preceding discussion of Ohio cases has been lengthy in order to show the

struct, occupy, or maintain any place of employment that is not safe.

Ohio Revised Code § 4101.01(C) defines employer as "every person, firm, corporation, agent, manager, representative, or other person having control or custody of any employment, place of employment, or employee. Ohio Revised Code § 4101.01(E) defines "frequenter" as "every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser."

"Employee" is defined in Ohio Rev.Code § 4101.01(D) as "every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit to engage in any employment, or to go, or

work, or be at any time in any place of employment."

6. Judge Markus occasionally uses the term "active participation" or "actively participate" in *Cafferkey*. However, the words used by the Ohio Supreme Court in *Hirschbach* are *"actual participation."* This Court believes the latter term is more accurate not only because it is the very language used by the Ohio Supreme Court but also because it encompasses situations where permission is denied. "Active participation" connotes an affirmative or cognizable act, a change from the status quo, whereas in several of the cases noted above the general contractor merely accepts the situation brought to his attention without making a change in that condition.

development of a landowner's duty to an independent subcontractor. It is not the case, despite defendant Cyclops' argument to the contrary, that a landowner owes no duty to an independent contractor. The teaching of *Hirschbach* is that a landowner may engage in conduct which either hinders the subcontractor's performance of his duty or fails to eliminate a hazard.

The Court's inquiry cannot end simply by saying that Cyclops discharged its duty because Baghouse was aware of the fire hazard posed by the zinc dust. Indeed, it would be incredible for Baghouse not to know of such a hazard since Cyclops hired Baghouse because of its experience with such matters. *Millhouse* is applicable only to the degree it establishes a threshold, the very least the law expects from a landowner. *Hirschbach* and Ohio's frequenter statutes suggest that a greater duty than mere notification may devolve on the defendant.

■ Sufficient evidence exists to find that defendant Cyclops retained custody and control over the baghouse. As in *Walker*, the contract between Baghouse and Cyclops requires the independent contractor to "comply ... with all instructions and regulations of the Company's Safety Department." Section IV, Contract Sawmill Tubular Division. Hence, Cyclops can be held liable under Ohio's frequenter statutes.

■ Defendant is incorrect in contending that the determination of retention of custody turns on the presence of an inspector. Cyclops states that it *"never* had a supervisor or other official on hand to oversee or inspect J & J Baghouse's work." (Defendant's Response to Plaintiff's Amended Motion for Summary Judgment and Supplemental Brief and Memorandum of Law Contra to Defendant Cyclops Corporation's Motion for Summary Judgment at 4–5). However, *Walker* did not rest its finding of retention of custody and control on the presence of an inspector. Rather, the Court stated: "[W]e find that sufficient evidence was presented to establish a retention of custody and control over the construction site by Mid-States and to raise an issue of fact for the jury as to whether, by the reasonable exercise of the rights retained by Mid-States *by virtue of its contract with Stout,* Mid-States could have discovered and eliminated the hazard which caused the tragic death of one employee and the permanent disablement of another." (emphasis added). It is correct that the *Walker* Court noted that in *Hirschbach* the presence of an inspector established the retention of custody and control, but the *Walker* Court did not make an inspector's presence a necessary condition for such a finding.

■ The next question in the instant case is whether Cyclops' conduct constitutes "actual participation." Two incidents are offered by plaintiff as alleged acts of "actual participation" by Cyclops. First the fact that Cyclops provided the light bulb which caused the Baghouse fire and second, the refusal by Cyclops to provide explosion-proof lighting at the request of the J. & J. Baghouse employees on June 5, 1978, three months before the September 16, 1978 fire.

■ This case resembles the *Hirschbach* situation sufficiently to raise a jury question. The critical fact in *Hirschbach* as pointed out in Judge Markus' opinion in *Cafferkey* was the request by the independent contractor and denial of permission to alter or remedy the situation. It is uncontroverted that employees of Cyclops were aware of the dangers of fire in the Baghouse and that three other fires had occurred previously. It is a question for a jury to determine whether with this knowledge, Cyclops was negligent in refusing to take steps to correct the conditions when it was brought to Cyclops' attention by Baghouse employees. It is true that a landowner hires a subcontractor to do work requiring special skills or knowledge and that often this decision is motivated by the knowledge that an inherent danger or risk is involved. At the same time, it is not the rule in Ohio that once the hiring decision is made the independent contractor and his

employees are completely independent and stripped of protection. In reality, the independent contractor is not really "independent." To the degree he must ask permission of the landowner, in this case, Cyclops, to install safety devices, he foregoes both the autonomy and responsibility for the consequences of those acts. The landowner therefore participates in the act. In sum, Cyclops' denial constitutes actual participation by: (1) refusing to eliminate a hazard; (2) interfering with Baghouse's ability to conduct the cleaning process in the manner it might have chosen.

The law recognizes that some activities are inherently dangerous and so protects landowners from strict liability for accidents arising out of such activities. However, there is a continual balancing between the rights of landowners and contractors, a balancing which turns on the question of what reasonably can be done to prevent injuries. As this Court stated in its earlier order denying plaintiff's summary judgment motion, the evidence is not sufficient to show that "defendants were under a duty to provide such [safety] equipment." At the same time, it is for juries to determine what conduct is reasonable and what is negligent. A jury may determine that Cyclops acted reasonably in refusing to install explosion-proof lights or a sprinkler system. On the other hand, it may conclude that Cyclops failed to eliminate what might be considered a "pre-existing hazard."

The parties have placed great emphasis on Cyclops' furnishing an improper lightbulb to plaintiff; plaintiff contends that lending the bulb constitutes "actual participation" while defendant argues its act does not rise to that level. It is indeed the case that Baghouse was responsible for providing the tools and equipment to do the job. Part XI of the contract between Cyclops and Baghouse states that "the Contractor shall supply all the tools, machinery, equipment, materials and articles necessary for the prosecution of the work." However, Cyclops did anticipate furnishing materials to its independent contractors: Cyclops has specifically contracted itself out of liability for "injury" or "damage" sustained through the use of equipment "whether owned or not, furnished or lent by the company." *See* Part II of contract. In viewing such a contract, considerations of public policy arise. The court grapples with competing values, namely permitting landowners to expedite and help in the completion of a job by providing equipment to their independent contractors safely versus prohibiting these landowners from contracting out of liability which should be theirs as a consequence of the use of their equipment. Freedom of contract confronts the protection of employees in such a situation. A contradiction may exist for a landowner who on the one hand calls a contractor "independent" and on the other provides the subcontractor equipment. The Court does not wish to rule today in such a way that forces landowners to either close their supply rooms down entirely to independent contractors or compels them to place legal counsel or other supervisors in these supply rooms to advise on whether this tool or that can be lent out without resulting in substantial exposure for the company. Having already determined that the denial of Baghouse's request to install explosion-proof lighting rises to the level of actual participation on the part of Cyclops, the Court need not determine whether the act of loaning a lightbulb constitutes actual participation.

■ There may be issues of contributory negligence in this case given plaintiff's failure to follow the safety procedures of Cyclops and his employer Baghouse. In any event, "issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner." *Rogers v. Peabody Coal Co.*, 342 F.2d 749, 751 (6th Cir. 1965). Similar considerations arise when contributory negligence is alleged. *Heath v. John Deere Co.*, 308 F.Supp. 235, 238 (W.D.Okla.1969). A jury can properly consider the effect of plaintiff's use of a light bulb instead of a flashlight.

Therefore, viewing the evidence in the light most favorable to plaintiffs (who are opposing the motion), the Court concludes that defendant Cyclops did participate in the job of cleaning the baghouse and that an issue as to whether such participation constitutes negligence is an issue for a trier of fact. Accordingly, defendant's motion for summary judgment is denied.

IT IS SO ORDERED.