HIRSCHBACH, ADMX., APPELLANT, *v.*
CINCINNATI GAS & ELECTRIC COMPANY, APPELLEE, ET AL.

[Cite as Hirschbach *v.* Cincinnati Gas & Elec. Co. (1983),
6 Ohio St. 3d 206.]

(No. 82-1362—Decided August 10, 1983.)

*Grieser, Schafer, Blumenstiel & Slane Co., L.P.A., Mr. C. Richard Grieser* and *Mr. J. B. Blumenstiel,* for appellant.

*Messrs. Taft, Stettinius & Hollister* and *Mr. Gerald J. Rapien,* for appellee.

J. P. CELEBREZZE, J. Hirschbach was an electrical lineman working for the Wagner-Smith Company, an independent contractor, which had been retained by CG&E to build and renew electric transmission and distribution lines in CG&E's service area. The work included replacing three copper wire conductors with aluminum wire conductors. The Wagner-Smith crew had been working on the job site for approximately a month, had replaced two of the conductors successfully and was in the process of replacing the third and final conductor on the day of the fatal accident. The decedent and a fellow lineman climbed up to the lower arm of the end tower, to disengage the end of the conductor from its insulator, so that the old wire could be replaced. To release the old wire from its insulator and lower it to the ground, a winch line cable attached to a caterpillar tractor on the ground was utilized.

After the winch line had been raised and attached to the old wire, Hirschbach walked out on the tower arm to release the insulator. Before he could return to the tower cage, the tower arm collapsed, causing Hirschbach to fall some ninety feet to his death. The tower arm collapsed because of excessive downward force exerted by the Wagner-Smith winch line. This excessive force was caused by the tractor winch having been positioned too close to the base of the tower. In order to avoid exerting excessive downward force on the tower arm during the winching operation, it is customary to position the winch tractor away from the base of the tower at a distance of at least three to four times the height of the tower arm. The tower was approximately one hundred feet high. At the time of the accident, the winch tractor was located not more than eighty to ninety feet away from the base of the tower, rather than the preferred distance of three hundred to four hundred feet.

Prior to this accident, Hirschbach and several of his fellow linemen discussed the positioning of the winch tractor with Edward A. Moore, the inspector in charge of the job site for CG&E. They told Moore that they thought the winch tractor was too close to the base of the tower and sought permission from him to position the winch tractor a safe distance away from the base of the tower. In order to do so, a chain link fence would have had to been removed and the winch tractor would have had to been placed on park land adjacent to the CG&E site. Moore denied their request and told them the winch tractor could not be placed in the park because CG&E did not want to be responsible for any resulting damages.

The first issue presented here is whether one who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held

responsible for the injury or death of an employee of the independent contractor.

Appellee contends that under the principle[1] enunciated in *Wellman* v. *East Ohio Gas Co.* (1953), 160 Ohio St. 103 [51 O.O. 27], it cannot be held responsible for decedent's death.

Appellant contends that the *Wellman* line of cases is not applicable to the factual situation in this case. The controlling and dispositive factual distinction is that in this case, the appellee actually participated in the job operation performed by the crew of the independent contractor. *Schwarz* v. *General Electric Realty Corp.* (1955), 163 Ohio St. 354, 359 [56 O.O. 319]. For the reasons set forth below, we agree with appellant's contention.

There is no question that CG&E had custody and control over the premises where the work was being performed. Hence the Ohio "frequenter" statutes are applicable here. R.C. 4101.01 *et seq.* "* * * Under these statutes, * * * [CG&E] owed decedent a duty to provide him with a place of employment which was as safe and free from danger as the nature of the employment would reasonably permit." *Parsons* v. *Blount Bros. Construction Co.* (C.A. 6, 1960), 281 F. 2d 414, 417.

There is no question that CG&E, through Moore, knew that the winch tractor had been placed too close to the base of the tower. CG&E also knew that the Wagner-Smith crew attempted to remedy the situation by seeking permission from Moore to reposition the winch tractor.

Hence, under the circumstances of this case, a jury could reasonably conclude that CG&E had sole control over the safety features necessary to eliminate the hazard. By denying the Wagner-Smith crew its request to reposition the winch tractor: (1) CG&E refused to eliminate the hazard,[2] (2) CG&E interfered with the mode of the job operation, and (3) CG&E actually participated in the job operation by dictating the manner and mode in which the winching phase of the job was to be performed.

Based upon the foregoing, it is our opinion that this case presents a jury question as to whether CG&E is responsible for decedent's death by allegedly failing to eliminate a hazard which it, in the exercise of ordinary care, could have eliminated.

The second issue presented here is whether the defense of assumption of risk is a bar to recovery in this action.

Appellee contends that appellant is barred from any recovery in this ac-

---

[1] The first paragraph of the syllabus in *Wellman* reads:

"Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor."

[2] "The existence of hazards which could be eliminated by the exercise of ordinary care by those in custody and control of the premises cannot be considered as inherent hazards necessarily present because of the character of the work to be done." *Parsons, supra,* at 417.

tion because the decedent, as a matter of law, assumed the risk of his injury and death. As explained below, the defense of assumption of risk is no longer a bar to recovery in negligence actions in Ohio.

Contributory negligence had long been a bar to recovery for an injured party under the common law of Ohio. The General Assembly eliminated the harsh result when it adopted R.C. 2315.19, effective June 20, 1980.[3] This statute abolishes the old common-law bar of contributory negligence and substitutes a comparative negligence standard. Under this standard, a plaintiff may recover for injuries which arise from the negligence of defendant, even if the plaintiff himself is negligent to a degree. The recovery of the plaintiff is adjusted by the degree of his contributory negligence to the incident.

In *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100, we adopted the comparative negligence standard set forth in R.C. 2315.19 as a modification of the common-law standard in Ohio, and held that this comparative negligence standard shall be applied in all negligence actions, irrespective of the occurrence date.

In *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, we merged the common-law defense of assumption of risk into the comparative negligence statutory scheme contained in R.C. 2315.19.

In view of the foregoing, the defense of assumption of risk is no longer a bar to recovery in a negligence action in Ohio. Hence, we are of the opinion that this case presents a jury question concerning the alleged negligence of the decedent and CG&E, to be evaluated by the standard contained in R.C. 2315.19.

The judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

CELEBREZZE, C.J., RESNICK and C. BROWN, JJ., concur.

W. BROWN, LOCHER and HOLMES, JJ., dissent.

RESNICK, J., of the Sixth Appellate District, sitting for SWEENEY, J.

WILLIAM B. BROWN, J., dissenting. Because the majority opinion ignores well-defined rules of law applicable to this case and misrepresents a

---

[3] R.C. 2315.19(A)(1) provides in pertinent part:

"In negligence actions, the contributory negligence of a person does not bar the person or his legal representative from recovering damages that have directly and proximately resulted from the negligence of one or more other persons, if the contributory negligence of the person bringing the action was no greater than the combined negligence of all other persons from whom recovery is sought. * * *"

"fact" essential to the majority's disposition of the case, I must respectfully dissent.

The central issue presented in this case is whether appellee, CG&E, owed a duty to protect the employees of an independent contractor where the independent contractor undertook to do work for CG&E which involved risks that the contractor and his employees appreciated.

The law is well-established in Ohio that a party who engages an independent contractor to perform services involving a risk of injury owes no duty to protect the independent contractor's employees from injury arising out of the work. *Wellman* v. *East Ohio Gas Co.* (1953), 160 Ohio St. 103 [51 O.O. 27]. In the first two paragraphs of the syllabus of that case, the following rules were set forth:

"Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.

"One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance."

This rule has subsequently been followed in *Schwarz* v. *General Electric Realty Corp.* (1955), 163 Ohio St. 354 [56 O.O. 319]; *Evans* v. *Whirlpool Corp.* (1967), 10 Ohio St. 2d 240 [39 O.O.2d 372]; and *Briere* v. *Lathrop Co.* (1970), 22 Ohio St. 2d 166 [51 O.O.2d 232].

In the present case, appellant's decedent was working as an employee of an independent contractor hired by CG&E to install and replace high-tension wires on steel towers. In performing their normal duties, these linemen are constantly exposed to the obvious risk of serious injury or death. In this case, the ordinary dangers inherent in the work were further enhanced because the position of the winch tractor placed greater than normal strain on the tower arm upon which the decedent was required to work. The record clearly indicates that this increased risk was apparent not only to Wagner-Smith's supervisory personnel but to the decedent and his fellow employees as well.

The next step in the analysis requires a determination of whether the injury resulted from an inherent risk necessarily present because of the character of the work to be done or some abnormally dangerous condition or operation on the premises. Appellant attempts to define the risk as a particular hazard solely within the control of the appellee the existence of which could be eliminated by ordinary care on the part of those having custody and control of the premises.[4]

---

[4] In addition, appellant attempts to characterize appellee's actions as willful and wanton misconduct. However, this issue is not properly before the court because appellant neither raised nor pursued it at any level below.

The general rule in Ohio is that when an owner engages an independent contractor to do work, an employee of the contractor, while performing the work, is on the premises as an invitee of the owner and the owner owes the employee the duty of exercising ordinary care to safely maintain the premises. However, this duty does not extend to any inherent hazards which are necessarily present because of the character of the work to be done. *Schwarz* v. *General Electric Realty Corp., supra,* paragraph one of the syllabus. In this case, the tower arm collapsed because of excessive downward force exerted by the Wagner-Smith winch line due to the positioning of its winch tractor too close to the base of the tower. This is clearly a hazard created by the manner in which the work was being done rather than by some latent, dangerous condition or dangerous operation being independently conducted by CG&E on the premises. Therefore, CG&E did not owe a duty to the deceased. Even if the condition were some incidental or abnormally dangerous condition maintained by CG&E, appellant is not entitled to recover. As was stated in the first paragraph of the syllabus in *Davis* v. *Charles Shutrump & Sons Co.* (1942), 140 Ohio St. 89 [23 O.O. 299]:

"Where the premises upon which construction work is to be performed by a contractor remains under the control of the principal employer while the work is in the course of performance, a servant of the contractor is an invitee and as such entitled to recover from the principal employer for any injury which he may sustain by reason of the abnormally dangerous condition of the premises, *only if the principal employer has, and the servant has not, actual or constructive notice of the existence of such condition.*" (Emphasis added.)

In this case, then, whether or not CG&E maintained exclusive control over the premises is immaterial. Because the independent contractor, Wagner-Smith, and the decedent himself had actual knowledge of the existence of the condition, appellant is not entitled to recover from the principal employer under the rule of *Davis.* The same analysis defeats appellant's argument that CG&E owed decedent a duty under the Ohio frequenter statute, R.C. 4101.11. *Moore* v. *Denune & Pipic* (1971), 26 Ohio St. 2d 125 [55 O.O.2d 237]. The inherent risk doctrine as expressed by the *Wellman-Schwarz* line of cases and the notice requirements as set forth in *Davis* are not inconsistent with the common-law duty owed to an invitee. Nor are they inconsistent with Ohio's frequenter statute. The majority's reliance on *Parsons* v. *Blount Bros. Construction Co.* (C.A. 6, 1960), 281 F. 2d 414, is misplaced.

The majority opinion also misrepresents the active role of CG&E in the operation which resulted in the accident. That opinion states that "the appellee actually participated in the job operation performed by the crew of the independent contractor." In fact, the only participation of CG&E in the operation was to have one of its own employees, Edward A. Moore, on hand to monitor the job and inspect the work as it progressed. There is no evidence that the hazard could have been eliminated by appellee. The record indicates that appellee neither interfered with nor assumed control over any

aspect of the work. In regard to the supposed refusal by Moore to allow the winch tractor to be placed in the park, there is no evidence that appellee could have given permission to move the winch tractor off CG&E property and onto private park property.

Even if this court were to accept appellant's arguments as to the extent of the control exercised by CG&E, appellant would still not be entitled to recover. Appellant's argument is that appellee became, in fact, decedent's employer by virtue of control over the work performed. However, this argument states too much, for if accepted as true, CG&E is immune from liability pursuant to R.C. 4123.74 since CG&E is and was a compliant employer under the workers' compensation laws. If CG&E has exercised such active participation in the job operation as to be susceptible to liability under the majority's rationale, then under this court's holdings in *Vandriest* v. *Midlem* (1983), 6 Ohio St. 3d 183, *Daniels* v. *MacGregor Co.* (1965), 2 Ohio St. 2d 89 [31 O.O.2d 141], and *Campbell* v. *Central Terminal Warehouse* (1978), 56 Ohio St. 2d 173 [10 O.O.3d 342], CG&E will not be liable to respond in damages for any injury received by an employee in the course of or arising out of that work.

For the foregoing reasons, I must respectfully dissent.

LOCHER and HOLMES, JJ., concur in the foregoing dissenting opinion.

LOCHER, J., dissenting. I share the conclusions expressed by Justice William B. Brown in his dissent and, thus, cannot join with the majority in its decision. Moreover, I must further reject the court's analysis for the reasons articulated in the dissent in *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, as I do not believe that the enactment of R.C. 2315.19 resulted in the merger of the defense of assumption of risk with that of contributory negligence.