833 F.2d 1012
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Beverly A. GILES, et al., Plaintiffs,
v.
SUN PIPE LINE COMPANY, Defendant-Third Party Plaintiff-Appellant,
v.
TRANSAMERICA INSURANCE COMPANY, Third Party Defendant-Appellee.
 No. 86-3281.
 United States Court of Appeals, Sixth Circuit.
 Nov. 30, 1987.
 
 Before ENGEL and BOGGS, Circuit Judges, and HOLSCHUH, District Judge.*
 PER CURIAM.
 
 
 1
 This appeal arises from a decision by District Judge John W. Potter, following a trial to the court, in which he held that Appellant, Sun Pipe Line Company (Sun), was not insured by a policy of insurance issued by Appellee, Transamerica Insurance Company (Transamerica), to M. Petty & Sons Enterprises, Inc., (Petty & Sons) which had contracted with Sun to perform work on Sun's premises. We affirm the lower court's judgment.
 
 I.
 
 2
 Sun is the owner of a transmission station and tank farm in Boardman, Ohio, where gasoline is stored in large tanks prior to its transmission to destination points. In connection with Sun's need to install floating roofs on the storage tanks, Sun entered into a contract with Petty & Sons to drain, ventilate and clean three storage tanks. The contract and incorporated documents contained specifications, procedures and safety standards which were to be followed by employees of Petty & Sons and which gave Sun the authority to stop the work if unsafe conditions existed.
 
 
 3
 On September 11, 1980, Sun's employees removed a manhole cover on the side of the third storage tank to be drained and cleaned. When the Petty & Sons employees, Randy Giles, Steve Wilson and Mike Petty, arrived at the worksite, they were unable to pump the remaining gasoline from the tank into their trucks because the pump's battery was dead. Using jumper cables attached to the battery of a Petty & Sons pickup truck, they were able to start the pump. Later in the day, while again using the jumper cables to restart the pump's battery, an explosion occurred, probably the result of a spark from the jumper cables igniting gasoline vapors that had accumulated from the open manhole, and two of the Petty & Sons' employees, Giles and Wilson, suffered severe injuries from which they died.
 
 
 4
 The next of kin and estates of Giles and Wilson brought actions against Sun for damages due to Sun's alleged negligence. Sun then filed a third party complaint against Transamerica, contending that a policy of Transamerica issued to Petty & Sons provided coverage to Sun for any liability of Sun resulting from the accident. Transamerica denied that Sun was covered by the policy. During the course of the litigation Sun, following notice to Transamerica, reached a settlement of plaintiffs' claims. The issue then presented to the District Court was whether Transamerica was liable to Sun for the settlement amounts paid by Sun and for Sun's cost of defense. The District Court concluded that Sun was not insured under the insurance policy issued by Transamerica to Petty & Sons and rendered a judgment dismissing Sun's third party complaint against Transamerica with prejudice.
 
 II.
 
 5
 The following language from the insurance policy issued by Transamerica to Petty & Sons is pertinent to the issues presented by this appeal:
 
 PART IV. LIABILITY INSURANCE
 A. WE WILL PAY
 
 6
 1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damages to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.
 
 
 7
 2. We have the right and duty to defend any suit asking for these damages. However, we have no duty to defend suits for bodily injury or property damages not covered by this policy.
 
 
 8
 ...
 
 D. WHO IS INSURED
 
 9
 1. You are insured for any covered auto.
 
 
 10
 2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except
 
 
 11
 a. Someone using a covered auto you hire or borrow from one of your employees or a member or his or her household,
 
 
 12
 b. Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking autos.
 
 
 13
 3. Anyone liable for the conduct of an Insured described above is an Insured but only to the extent of that liability. However, the owner or anyone else from whom you hire or borrow a covered auto is an Insured only if that auto is a trailer connected to a covered auto you own.
 
 
 14
 It is clear that Sun, to bring itself within the coverage of the policy, had to establish first that the accident resulted from the "ownership, maintenance or use" of a covered vehicle (Part IV, par. A1) and second that Sun was an "insured," as defined in the policy, either by reason of Sun's "using" the covered vehicle (Part IV, par. D2) or Sun's being liable for the conduct of Petty & Sons' employees (Part IV, par. D3).
 
 
 15
 The District Court reached the following conclusion:
 
 
 16
 It is the conclusion of this Court that Sun, under the facts of this case, is not an insured under the policy. One, Sun was not "liable for the conduct of an insured." Two, Sun was not using the truck. Only the employees of Petty were using the truck.
 
 
 17
 (Joint Appendix, p. 32).
 
 A.
 
 18
 Sun contends that the District Court did not correctly interpret the coverage provision that describes Transamerica's obligation with regard to an accident "resulting from the ownership, maintenance or use of a covered automobile." (Part IV, par. A1). Sun argues that the jump starting of the pump battery by using the battery of the covered vehicle, Petty & Sons' pickup truck, clearly constituted "use of a covered vehicle." The District Court, however, did not base its conclusion on any issue arising under this provision of the policy. Indeed, it seems clear that the District Court assumed that the use of the covered vehicle brought it within this particular provision of the policy. Simply establishing that the use of the pickup truck precipitated the accident is not, however, sufficient to bring Sun within the coverage of the policy. As the provision in question states, Transamerica agreed to pay "all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." (Emphasis added). In fact, Sun acknowledges that, "In addition to establishing that the injuries which occurred on September 11, 1980 resulted from the 'ownership, maintenance or use' of a vehicle, the Sun Pipe Line Company must also establish that it is an 'insured' as defined by the policy." (Brief of Appellant, p. 9). The coverage provision in question is of no consequence unless the party seeking that coverage qualifies as an "insured" within the definition of that term as used in the policy. The Travelers Ins. Co. v. The Buckeye Union Casualty Co., 172 Ohio St. 507, 513 (1961).
 
 
 19
 As noted above, one basis for bringing Sun within the definition of an "insured" would be to establish that Sun was somehow "using" Petty & Sons' covered vehicle at the time of the accident. It is in the context of this possibility--and not in the context of the "ownership, maintenance or use" provision--that the District Court made its finding that Sun was not using the truck and thus was not an "insured" by virtue of the truck's use at the time of the accident. This finding is well supported by the record and the applicable law. Ford Motor Co. v. Continental Casualty Co., 6 Ohio St.2d 114 (1966); The Travelers Ins. Co. v. The Buckeye Union Casualty Co., 172 Ohio St. 507 (1961).
 
 B.
 
 20
 On appeal, Sun does not claim that it was an "insured" by reason of any use by Sun of Petty & Sons' covered vehicle under Part IV, par. D2 of the policy. Instead, it claims that it was an "insured" under Part IV, par. D3 of the policy by reason of Sun being liable for the conduct of Petty & Sons' employees. Sun advances two basic arguments in support of this contention; first, that it was statutorily liable under the Ohio Frequenter Statute, Ohio Rev.Code 4101.11, and second, that under the provisions of its contract with Petty & Sons and as a matter of practice it exercised sufficient control over Petty & Sons' work that it was "liable for the conduct" of Petty & Sons' employees.
 
 1.
 The statute in question provides:
 
 21
 Sec. 4101.11. Duty of employer to protect employees and frequenters.
 
 
 22
 Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.
 
 
 23
 This statute clearly places a duty on an employer to furnish a place of employment that is safe not only for the employees but also for frequenters on the employer's premises and to do everything reasonably necessary to protect the life, health, safety and welfare of both employees and frequenters. This duty can extend to employees of independent contractors who are on the contracting employer's premises, Hirschbach v. Cincinnati Gas and Electric, 6 Ohio St.3d 206 (1983), but it is obvious that the statute does not impose on a contracting employer any liability for the conduct of employees of independent contractors. In the context of the present case, the liability of Sun under the statute, in short, is a liability to employees of independent contractors for a breach of the statutory duty owed to them resulting from the Sun's own conduct and not a liability for the conduct of the employees of an independent contractor. Thus, Sun could conceivably have been held liable to the next of kin and estates of the Petty & Sons employees who were fatally injured in the explosion on Sun's premises if Sun's own negligence could be shown. Any such liability would arise, however, from Sun's own conduct and not from the conduct of the Petty & Sons employees. It follows that Sun was not liable under the statute "for the conduct of an Insured," and Sun's contention that it was an "insured" under Part IV, par. D3 because of the frequenter statute is without merit.
 
 2.
 
 24
 Sun also contends that it was "liable for the conduct of an Insured" because of control it exercised over the conduct of Petty & Sons' employees. Sun points to provisions of its contract with Petty & Sons that gave Sun the right to participate in the work and the right to control the job site, including the right to instruct Petty & Sons' employees on job safety, the right to stop the work, and the right to have a company representative present at all times. There is evidence that on a few occasions an on-site representative of Sun did instruct Petty & Sons' employees to take certain safety precautions and also stopped the work once when the men were working without proper equipment. There is also evidence, however, that while Sun's representative would correct any unsafe procedures he observed, he did not supervise the Petty & Sons employees in the actual performance of their work.
 
 
 25
 The District Court found that the manner and means of performing the work, as well as the times of performance, were vested in Petty & Sons and, pursuant to the express provisions of its contract with Sun, Petty & Sons was an independent contractor and not an agent of Sun.[1] The Court concluded that Sun was not liable for the conduct of Petty & Sons.
 
 
 26
 The District Court's conclusion is supported by the record and by the law. Inasmuch as Petty & Sons retained control over the means of performing the work, it was, as the parties agreed in their contract, an independent contractor, even though Sun had some control over the safety aspects of the work to be performed. Sullivan v. General Electric Corp., 226 F.2d 290, 291 (6th Cir.1955). The general rule in Ohio, with exceptions not relevant here, is that an employer is not liable for the conduct of an independent contractor or his employees. Strayer v. Lindeman, 68 Ohio St.2d 32, 34 (1981).
 
 
 27
 The judgment of the District Court is AFFIRMED.
 
 
 
 *
 Honorable John D. Holschuh, District Judge, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 In Sun's contract with Petty & Sons, the parties specifically agreed that Petty & Sons "is an independent contractor in the performance of any work hereunder and that neither he nor his employees shall be considered employees of the owner." (App. 81)