OPINION
Plaintiffs-appellants, Arnulfo and Tammy DeAnda ("the appellants"), appeal from a judgment entered in the Hancock County Court of Common Pleas granting a motion for a new trial in favor of defendant-appellee Cooper Tire and Rubber Co. ("the appellee"). For the reasons that follow, we affirm the decision of the trial court.
The pertinent factual and procedural history is as follows: In the spring of 1990, Arnulfo DeAnda was employed as a journeyman pipefitter by Warner Mechanical Corporation of Fremont, Ohio. Cooper Tire contracted with Warner to construct and test a polyvinyl chloride ("PVC") piping system at Cooper Tire's manufacturing facility in Findlay, Ohio. The new piping system was designed by Cooper's engineers to replace an existing system constructed with galvanized steel and would carry water under low pressure through the plant to cool machines. Earl Ross, a former employee of Warner now working for Cooper, supervised and monitored the project's progress for Cooper Tire. On Sunday, April 1, 1990, during a combination air/water pressure test, the PVC pipe system exploded causing DeAnda to suffer severe injuries.
The cause was tried before a jury in the Hancock County Court of Common Pleas and resulted in a verdict in favor of the plaintiffs and an award of $2.5 million. A motion for judgment notwithstanding the verdict ("JNOV") and, in the alternative, a motion for a new trial were filed by the appellees. The motion for JNOV was overruled. The trial court sustained the motion for a new trial and ordered a new trial. Pursuant to Civ.R. 59(A)(6),[1] the trial court specifically found that the jury verdict was against the manifest weight of the evidence as to the issue of Cooper's active participation in the critical acts leading to DeAnda's injuries and whether injury to someone in DeAnda's position was foreseeable. The appellants now appeal and submit the following assignment of error.
 ASSIGNMENT OF ERROR The trial court erred in ordering a new trial.
In their sole assignment of error, the appellants argue that the trial court erred in granting the appellee's motion for a new trial. The appellants offer three primary arguments to support their contention that the lower court erred. First, they maintain that the court was mistaken in its assessment regarding foreseeability. Second, the appellants argue that the trial court's conclusions about "active participation" were based on an erroneously constructed view of the law governing owner liability. Third, the appellants contend that even if the court was correct about its stance on active participation, the verdict should still stand on the independent ground that Cooper failed to warn of the dangers even though it had superior knowledge of them. We will consider each of the appellants' arguments in order.
 Standard of Review
A trial court faced with a motion for a new trial is afforded wide discretion in determining whether a jury's verdict is against the manifest weight of the evidence.[2] The trial court, in its supervisory capacity, must ensure against a miscarriage of justice.[3]
In reaching its decision, the trial court may consider the sufficiency of the evidence.[4] The trial court's role is to weigh the evidence and pass upon the credibility of the witnesses in the sense of whether it appears that a manifest injustice has been done and the verdict is against the weight of the evidence.[5] Where, as in the present case, the court's decision involves questions of fact, "our task as a reviewing court is to `view the evidence favorably to the trial court's action rather than to the jury's verdict.'"[6]
In contrast to the question of whether to grant a motion for a new trial, deciding whether to grant a JNOV does not require the court to weigh the evidence or to question the credibility of witnesses.[7] The Supreme Court of Ohio has stated that "[t]he standard for granting a motion for J.N.O.V. is the same as that necessary to sustain a motion for a directed verdict."[8] The standard for granting a motion for a directed verdict is the following:
 When a motion for a directed verdict is entered, what is being tested is a question of law[.] * * * This does not involve weighing the evidence or trying the credibility of witnesses; it is the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence.[9]
 The trial court is to construe the evidence most favorably to the non-moving party and consider as established, every material fact it seeks to prove.[10]
However, a motion for JNOV, unlike a motion for a directed verdict, is evaluated on all the evidence presented at trial, rather than the evidence presented in the plaintiff's case-in-chief.[11]
Our review of a decision to grant a new trial does not involve evaluating or weighing the evidence, and the trial court's judgment should not be reversed absent an abuse of discretion.[12] The term "abuse of discretion" has been defined as "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[13] The word "arbitrary" has been defined as "`without adequate determining principle, * * * not governed by any fixed rules or standards.'"[14] Other definitions include "[d]epending on individual discretion; * * * (Of a judicial decision) founded on prejudice or preference rather than on reason or fact."[15] Most abuses of discretion are simply unreasonable rather than arbitrary or unconscionable, and a decision is "unreasonable" where there is "no sound reasoning process" supporting it.[16]
A. Foreseeability
To establish negligence, the plaintiff bears the burden of establishing that the defendant owed the plaintiff a duty, the defendant breached that duty, and that the breach proximately caused the aggrieved party's injury.[17] For the existence of a duty to arise, the harm must be foreseeable.[18] "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act * * *. The foreseeability of harm usually depends on the defendant's knowledge."[19]
Additionally, for the defendant to owe that person a duty of care, the aggrieved party must fall within the class of persons to whom injury may reasonably be expected.[20]
Three experts testified as to the possible cause of the explosion. Simon Tamny and James DeVore testified on behalf of the DeAndas, and Paul Johnston testified for Cooper. Tamny, a consulting engineer with a Masters degree in Mechanical Engineering from the California Institute of Technology, explained that the explosion was caused by the dislodging of an air bubble trapped at a blind flange directly behind where DeAnda was working. According to Tamny, DeAnda must have jarred the flange behind him causing the bubble to move which led to a phenomenon called water hammer.
According to trial testimony, water hammer occurs when air and water are combined under pressure in a closed system. While water is essentially non-compressible, the air in the system compresses storing energy like a coiled spring. Water movement and abrupt changes in the speed of the water's movement can increase that energy, creating an energy wave that increases the pressure and moves through the system at the speed of sound. As the high-pressure wave meets obstructions, it either rebounds back and forth until its energy is dissipated, or it causes an explosive failure that relieves the pressure. Tamny theorized that when the bubble dislodged, water rushed into the blind flange at a rate of 21 feet per second causing the initial failure. As the energy dissipated through the system, other portions of the pipe system failed, including the portion of pipe at the flange DeAnda was tightening.
DeVore, a mechanical engineer who has testified before government agencies on pipe safety issues, agreed that the explosion's cause was water hammer. He stated that inadequate engineering and design on behalf of Cooper's engineers made it difficult to remove all of the air for a pressure test. He claims that Cooper's engineers did not take adequate care in not defining and witnessing the test of the system.
Cooper's expert, Paul Johnston, who holds a Ph.D. in civil engineering stated the opinion that water hammer could not have caused the pipe's failure. Water hammer, he claims, only occurs in a fluid system and the test conducted was static, meaning the water was not circulating. Dr. Johnston theorized that the explosion occurred as a result of overtightened bolts which led to stress cracks in the pipes which, when combined with a pressurized system, led to failure.
The trial court based its decision on whether, according to Tamny and DeVore's theories, it was foreseeable that an air bubble would be trapped at the system's low point. The initial explosion occurred at a blind flange at the low point of the system. Typically, air pockets trapped in a pipe system filled with water tend to rise to the top and are, therefore, bled from the system's high points. If the jury believed Tamny's and Devore's theories that a shifting air bubble created water hammer, the trial court, with sound reasoning, determined that it was not foreseeable that a bubble would be trapped at a low point in the system. As the court points out, all of the experts stated that before conducting a pressurized water-only test on PVC piping air should be bled from the high points. Additionally, the Eslon[21] manual and ASME (American Society of Mechanical Engineers) standard B31.1 state that air should be bled from the system's high points. The trial court clearly supported its opinion that the evidence insufficiently demonstrated that it was foreseeable that DeAnda, or someone similarly situated, would be injured when an air bubble trapped in the system's low point, was jarred by him causing water to rush in at a rate high enough to cause water hammer.
Accordingly, we find that the trial court did not abuse its discretion in determining that the evidence was insufficient to demonstrate that anyone could have foreseen an injury to DeAnda, or someone similarly situated.
B. Active Participation
The appellants do not claim that the trial court's conclusions regarding "active participation" exhibited an unreasonable, arbitrary, or unconscionable attitude. Rather, the appellants contend that the trial court's conclusions were based on erroneously constructed views of the law governing owner liability and the evidence. When considering whether a trial court erroneously constructed the law our standard of review isde novo. "Where a new trial is granted by a trial court, for reasons which involve no exercise of discretion but only a decision on a question of law, the order granting a new trial may be reversed upon the basis of a showing that the decision was erroneous as a matter of law."[22]
Active participation which gives rise to a duty of care may exist "where a property owner either directs or exercises control over the work activities of the independent contractor's employees, or where the owner retains or exercises control over a critical variable in the workplace."[23] At the conclusion of the trial, the jury found by a preponderance of the evidence that Cooper actively participated in the critical act that caused DeAnda's injuries. The trial court ruled to the contrary and determined that the manifest weight of the evidence did not support the conclusion that the defendant actively participated in the work that precipitated DeAnda's injury. The appellants contend that the trial court's interpretation of "active participation," as defined inSopkovich v. Ohio Edison and Hirschbach v. Cincinnati Gas Electric, is in error.
In Sopkovich, the Supreme Court of Ohio held that a property owner can actively participate, thus giving rise to a duty of care, without participating in the actual work activities of an independent contractor.[24] Ohio Edison's representative at a work site exercised a supervisory role over a painting project carried out by an independent contractor to ensure that the work was properly completed.[25]
Ohio Edison did, however, control a critical variable within the workplace, deactivating certain electrical conductors in the work area.[26] The Court held that the evidence supported a finding of active participation, and thus a duty extending from Ohio Edison to the independent contractor, based upon Ohio Edison's retention and control over a critical aspect of the contractor's work environment.[27] The Court held so "regardless of the fact that Ohio Edison did not actively participate in the specific job activities of the independent contractor's employees."[28]
In Hirschbach, an independent contractor had been retained by Cincinnati Gas Electric ("CG E") to build and renew electric lines in CG E's service area.[29] An inspector in charge of the job site for CG E refused to allow the independent contractor to position a winch tractor, which was to be used to help release the old wire from its insulator, a safe distance from the base of a tower.[30] The tower's arm broke off, due excessive pressures exerted by the winch, sending Hirschbach some ninety feet down to his death.[31] The court found that CG E had custody and control over the premises where the work was being performed and determined that "a jury could reasonably conclude that CG E had sole control over the safety features necessary to eliminate the hazard."[32] Thus, the Court held that CG E actually participated in the job by dictating the manner and mode in which the job was to be performed.[33]
The trial court found the facts within Hirschbach dissimilar to the case at bar because here there was a dispute as to what the parties actually said and did. The inspector's role in Hirschbach was clear; however, in the present case there was a factual dispute about whether Ross, the project supervisor for Cooper, actually ordered the test. Our review of the evidence supports the conclusion that the extent of Ross's supervisory role is unclear. It is clear that Ross was not present on the day of the explosion dictating how the pressure test was to be carried out.
For similar reasons, the facts in Sopkovich are dissimilar to the present case. While Ohio Edison's control over a critical variable in the work area was clear (deactivating certain electrical conductors), Cooper Tire's control was not. However, Warner's control of the area was amply clear. Warner built the piping system and conducted tests at various pressures for leaks, just as they had done on previous projects for Cooper. And, as the trial court pointed out, while the defendant ordered the test, no one from Cooper participated in the "critical act," dislodging the bubble. While we agree with the appellants that the trial court's view of the "critical act" is narrow, this does not amount to an erroneously constructed view of the law. If Tamny's testimony is correct, dislodging the bubble was the critical act. But, from a broader perspective, even if the critical act was conducting the combined air/water pressure test that was performed that day, Cooper's involvement was so minimal that it does not meet the definition of "active participation." No one from Cooper exercised control over the test. DeAnda was running the pumps and tightening the bolts to stop the leaks.
The appellants also argue that the trial court was wrong to the extent that it dismissed DeVore's testimony on "active participation" grounds. DeVore, who stated that the system's design made it difficult to bleed the air out of the system, testified that Cooper should have had a qualified person, i.e., an engineer, present during testing to ensure that the test was conducted properly. The trial court found that failing to have a qualified person present during testing did not rise to the level of active participation. Both DeVore and Johnston said that an engineer's presence was not required by ASME B31.1 until the final test. The April 1 test was not the final test of the system. There were still leaks and the final test does not occur until the system is leak-free. As to DeVore's testimony, we find that the trial court did not erroneously construct or apply the law.
C. Superior Knowledge
In their final argument, the appellants contend that even if the trial court's conclusions regarding "active participation" were correct, the jury's verdict was fully supported by the evidence that Cooper had superior knowledge of the dangers and should have warned of them. The appellants cite Keffer v. Honda of America Mfg. Co.,[34] where this court held that a property owner's failure to disclose a hazard as to which it has superior knowledge is a basis of liability independent of "active participation."
In its charge to the jury, the trial court stated that to find for the DeAndas and against Cooper, on the element of duty, the jury must find by the greater weight of the evidence that Cooper directed the activity which caused the injury. The court then pointed out that, in order for Cooper to be responsible for the safety of Warner employees, Cooper must have had, and Warner must not have had, "actual or reasonable constructive notice of the existence of a dangerous condition such as water hammer."
Interrogatory No. 4 asked: "Did Warner Mechanical have information by which Warner Mechanical knew or had reasonable constructive notice about the hazard that resulted in plaintiff Arnulfo DeAnda's injury?" The jury responded in the negative, but we cannot infer from the jury's answer to this interrogatory that they found that Cooper had superior knowledge of the hazard.
Nevertheless, the court's failure to consider the issue of Cooper's superior knowledge does not prejudice the outcome of the motion for a new trial. The trial court cited two adequate and independent grounds upon which to base its decision that the jury's verdict was against the manifest weight of the evidence. The decision to grant a new trial was based upon the court's opinion that the jury's findings, with respect to foreseeability and active participation, resulted in a manifest injustice. As previously discussed, the trial court did not abuse its discretion in reaching its decision regarding foreseeability. The appellants have not challenged whether the trial court abused its discretion regarding the element of active participation. Therefore, we find the appellants' final argument is without merit.
 Conclusion
For the foregoing reasons, the appellants' sole assignment of error is overruled, and the order of the Hancock County Court of Common Pleas granting a new trial is affirmed.
Judgment affirmed.
WALTERS, P.J., concurs.
Richard W. Knepper, Judge of the Sixth Appellate District, sitting by assignment in the Third District Court of Appeals.
KNEPPER, J., Dissenting.
[1] Civ.R. 59(A)(6) states: "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
* * *
(6) The judgment is not sustained by the weight of the evidence; * * *"
[2] Osler v. City of Lorain (1986), 28 Ohio St.3d 345, 351, citing Rohde v. Farmer (1970), 23 Ohio St.3d 82, 91-93.
[3] Id.
[4] Id.
[5] Rohde, 23 Ohio St.2d 82, 83.
[6] Osler, 28 Ohio St.3d 345, 351, quoting Jenkins v. Krieger (1981),67 Ohio St.2d 314, 320.
[7] Rohde, 23 Ohio St.2d 82, 91.
[8] Nickell v. Gonzalez (1985), 17 Ohio St.3d 136.
[9] Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68.
[10] Id. at 69.
[11] Chemical Bank of N.Y. v. Neman (1990), 52 Ohio St.3d 204,207.
[12] Osler, 28 Ohio St.3d at 351.
[13] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219 (citations omitted).
[14] Dayton, ex rel. Scandrick v. McGee (1981), 67 Ohio St.2d 356,359, quoting Black's Law Dictionary (5 Ed.Rev.).
[15] Black's Law Dictionary (7 Ed.Rev. 1999) 100.
[16] AAAA Ent., Inc. v. River Place Community Urban Redev. Corp. (1990)50 Ohio St.3d 157, 161.
[17] Menifee v. Ohio Welding Prods., Inc. (1984), 15 Ohio St.3d 75,77.
[18] Calmes v. Goodyear Tire Rubber Co. (1991), 61 Ohio St.3d 470,474; Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142.
[19] Menifee, 15 Ohio St.3d at 77 (citations omitted).
[20] Jeffers, 43 Ohio St.3d at 142, citing Gedeon v. East Ohio Gas Co. (1934), 128 Ohio St. 335, 338-339.
[21] Eslon is the manufacturer of the PVC piping at issue.
[22] Rohde, 23 Ohio St.2d 82, paragraph two of the syllabus.
[23] Sopkovich v. Ohio Edison Co. (1998), 81 Ohio St.3d 628,642-643.
[24] Sopkovich, 81 Ohio St.3d 628, 642-643; Hirschback v. Cincinnati Gas Elec. Co. (1983), 6 Ohio St.3d 206.
[25] Sopkovich, supra.
[26] Id.
[27] Id.
[28] Id. at 643.
[29] Hirschbach, 6 Ohio St.3d 206.
[30] Id.
[31] Id.
[32] Id. at 208.
[33] Id.
[34] (Dec. 7, 1990), Union App. No. 14-89-28, unreported