OPINION
{¶ 1} Plaintiff-appellant Andre McCord appeals the November 16, 2004 Judgment Entry of the Knox County Court of Common Pleas granting summary judgment in favor of defendants-appellees Ron Laymon Trucking Company and Central Ohio Asphalt, aka Porter Porter.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 10, 2002, appellant sustained injury when a hose carrying hot liquid asphalt detached from a tanker trailer, spraying appellant. At the time, appellant was an independent contractor of Ron Laymon Trucking Company, a sole proprietorship, and had driven a tractor trailer containing liquid asphalt to Central Ohio Asphalt. Central Ohio Asphalt leased the land from Chesterville Sand and Gravel. Ron Laymon Trucking owned the tractor appellant was driving, and a non-party, MTI, owned the trailer containing the liquid asphalt.
 {¶ 3} Prior to the accident and in the normal course of his activities, appellant connected a hose to the tanker. A second hose, which was located on the premises of the Chesterville Plant, was then connected to the bottom of the pump and the receiving tank on the Chesterville property. Ron Laymon himself had installed the hose a month to six weeks prior to the accident. The second hose had wire gauge, instead of safety hooks, keeping the ears together. Appellant checked the "O" rings on both hoses prior to connection and did not notice any problems with the rings.
 {¶ 4} After connecting the hoses, appellant noticed liquid asphalt leaking from the Chesterville hose connected to the bottom of the pump and the receiving tank. He determined one of the "ears" used to fasten the hose to the truck was "starting to come open." Appellant "pushed the ear back up." When he did so, the hose "kicked off" and sprayed liquid asphalt causing appellant's injury.
 {¶ 5} Appellant initiated this action against Ron Laymon Trucking and Central Ohio Asphalt. The parties moved for summary judgment before the trial court. On November 16, 2004, via Judgment Entry, the trial court granted summary judgment in favor of appellees Ron Laymon Trucking and Central Ohio Asphalt and against appellant.
 {¶ 6} Appellant now appeals, assigning as error:
 {¶ 7} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S RULE 56(F) MOTION AND FAILING TO PERMIT APPELLANT ADDITIONAL TIME FOR DISCOVERY RELEVANT TO THE MOTIONS FOR SUMMARY JUDGMENT FILED BY APPELLEES-DEFENDANTS IN THE MATTER.
 {¶ 8} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES-DEFENDANTS IN THAT THERE WERE GENUINE FACTUAL DISPUTES AS TO WHETHER BOTH APPELLEES-DEFENDANTS EITHER ACTIVELY PARTICIPATED AND/OR CONTROLLED CRITICAL VARIABLES IN APPELLANT-PLAINTIFF'S TASK AND THUS COULD PROPERLY BE FOUND LIABLE BY A JURY."
 I {¶ 9} In the first assignment of error, appellant maintains the trial court erred in denying his Rule 56(F) motion for additional time for discovery. Rule 56(F) states:
 {¶ 10} "(F) When affidavits unavailable
 {¶ 11} "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."
 {¶ 12} Appellant moved the trial court to allow time for additional discovery prior to his responding to appellees' motions for summary judgment. Specifically, appellant requested an additional month to conduct additional depositions in the matter. Appellant indicated knowledgeable witnesses from defendants other than Ron Laymon Trucking, namely Chesterville Sand Gravel Company and Central Ohio Asphalt, aka Porter Porter, identified Ron Laymon in their testimony, and had not yet been deposed.
 {¶ 13} Appellant argues the trial court's denial of his motion for additional time was an abuse of discretion.
 {¶ 14} A party seeking additional time to respond to a motion for summary judgment must present sufficient reasons to demonstrate a continuance is warranted. Glimcher v. Reinhorn (1991),68 Ohio App.3d 131, 138, 587 N.E.2d 462. The decision whether to grant a motion for extension of time lies within the broad discretion of the trial court and will be reversed on appeal only for an abuse of discretion. Civ.R. 6; see, also, Miller v. Lint (1980), 62 Ohio St.2d 209,404 N.E.2d 752.
 {¶ 15} Civ.R. 56(F) also requires a party opposing summary judgment to submit affidavits with sufficient reasons stating why it cannot present by affidavit facts sufficient to justify its opposition. "Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment. There must be a factual basis stated and the reasons given why it cannot present facts essential to its opposition of the motion." Gates Mills Invest.Co. v. Pepper Pike (1978), 59 Ohio App.2d 155, 169, 392 N.E.2d 1316.
 {¶ 16} Upon review, appellant failed to support his request for additional time with sufficient reasons and citations to facts warranting a continuance. Accordingly, the trial court did not abuse its discretion in denying appellant's motion for additional time to respond to the motion for summary judgment.
 {¶ 17} Appellant's first assignment of error is overruled.
 II {¶ 18} In the second assignment of error, appellant maintains the trial court erred in granting summary judgment in favor of appellees Ron Laymon Trucking and Central Ohio Asphalt.
 {¶ 19} Our standard of review is de novo, and as an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 506 N.E.2d 212. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brownv. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711,622 N.E.2d 1153; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12,599 N.E.2d 786.
 {¶ 20} Civ.R. 56(C) provides, in relevant part, as follows:
 {¶ 21} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 22} Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164.
 {¶ 23} Where an independent contractor undertakes a job for another, "in the very doing of which there are elements of * * * danger, * * * no liability * * * ordinarily attaches to the one who engaged the services of an independent contractor." Wellman v. East Ohio Gas Co. (1953),160 Ohio St. 103, 113 N.E.2d 629, paragraph one of the syllabus. Such an invitee may recover only when the injury results from an abnormally dangerous condition of the premises, and only if the principal employer has and the servant does not have, actual or constructive knowledge of the existence of such condition. Davis v. Charles Shutrump Sons Co.
(1942), 140 Ohio St. 89, 42 N.E.2d 663, paragraph one of the syllabus.
 {¶ 24} The Supreme Court created an exception to this general "no duty" rule in Hirschbach v. Cincinnati Gas Elec. Co. (1983),6 Ohio St.3d 206, 452 N.E.2d 326. The court held "one who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." Id.
 {¶ 25} Active participation means "the general contractor directed the activity which resulted in the injury and or gave or denied permission for the critical acts leading to the employee's injury, rather than merely exercising a general supervisory role over the project." Bond v.Howard (1995), 72 Ohio St.3d 332, 650 N.E.2d 416 at syllabus.
 {¶ 26} Initially we note, neither party disputes appellant acted as an independent contractor of Ron Laymon Trucking. The question on appeal, therefore, becomes whether Ron Laymon actively participated in the activity which resulted in the injury. Ron Laymon testified at deposition he himself installed the hose which leaked liquid asphalt causing the injury. Specifically, Laymon testified:
 {¶ 27} "Q. You answered Mr. Hohenberger's question, his question was, essentially, your understanding was that Central was not responsible for maintaining the hose which had the problem here or whatever, that ultimately leaked.
 {¶ 28} "Who was responsible, if not Central, in your understanding?
 {¶ 29} "A. My understanding was MTI supplied the hose for Central Ohio Asphalt.
 {¶ 30} "Q. Okay. Not Chesterville, correct? Not the place —
 {¶ 31} "A. Chesterville Sand and Gravel, no.
 {¶ 32} "Q. And your understanding was that MTI supplied that hose and the end assembly we're talking about?
 {¶ 33} "A. Yes.
 {¶ 34} "Q. Did you have anything to do with that supplying of that, or installation of it, you or Ron Laymon Trucking is what I mean?
 {¶ 35} "A. I made sure that the hose was there, you know.
 {¶ 36} "Q. Pre-incident, correct? We are talking about before the incident you made sure the hose was there.
 {¶ 37} "Did you put the hose in is what I'm asking, you, yourself?
 {¶ 38} "A. Yes.
 {¶ 39} "Q. When you put it in, did it have the — did it have the wire we're talking about that you described that you felt was okay?
 {¶ 40} "A. Yes, sir.
 {¶ 41} "Q. Was this hose — when would this have been put in? I mean, a week before, a year before, 10 years before?
 {¶ 42} "A. It was probably — Mr. Porter — probably I'm saying maybe a month to six weeks before this.
 {¶ 43} "Q. So a month to six weeks before this incident occurs you personally put this hose in there so as to permit deliveries, is that fair?
 {¶ 44} "A. Yes.
 {¶ 45} "Q. Do I take it — had there been a hose there before? Was this a replacement, or was this a new delivery point?
 {¶ 46} "A. It was a replacement.
 {¶ 47} "Q. So a hose had been taken out or replaced with this one?
 {¶ 48} "A. Yes.
 {¶ 49} "Q. Had there been a problem with the old one, or just time to replace it or what?
 {¶ 50} "A. It was not MTI's hose.
 {¶ 51} * * *
 {¶ 52} "Q. I mean, why did you have to replace the pipe?
 {¶ 53} "A. Because it was not MTI's hose.
 {¶ 54} "Q. Just a change?
 {¶ 55} "A. Yes, for safety.
 {¶ 56} * * *
 {¶ 57} "Q. So when you say that you didn't perceive any problems with it, one of the reasons is because you're the one that put it in there, is that fair to say?
 {¶ 58} "A. I guess because I'm the one that inspects it, I inspected it and made sure it was right." Tr. at 61-66.
 {¶ 59} Based upon the above, it is clear a genuine issue of material fact remains and reasonable minds could come to differing conclusions as to whether Ron Laymon actually participated in appellant's job operation by replacing the hose without safety hooks, and the trial court erred in granting summary judgment in favor of Ron Laymon Trucking, the sole proprietorship of Ron Laymon.
 {¶ 60} We now address the liability of Central Ohio Asphalt. Appellant argues Central Ohio Asphalt's liability arises under the frequenter statute, which states:
 {¶ 61} "Every employer * * * shall furnish a place of employment which shall be safe for * * * frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such frequenters."
 {¶ 62} The duty owed to frequenters is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring the owner or occupier to keep the premises in a reasonably safe condition, and provide warning of dangers of which he or she has knowledge. Westwood v. Thrifty Boy (1972), 29 Ohio St.2d 84,278 N.E.2d 673, paragraph one of the syllabus. Where the frequenter is an employee of an independent contractor, the duty mandated by the frequenter statute does not extend to hazards which are inherently and necessarily present because of the nature of the work performed.McConville v. Jackson Comfort Sys., Inc. (1994), 95 Ohio App.3d 297,642 N.E.2d 416; Eicher v. U.S. Steel Corp. (1987), 32 Ohio St.3d 248,512 N.E.2d 1165 paragraph one of the syllabus.
 {¶ 63} Appellant has not presented evidence Central Ohio Asphalt possessed knowledge of an unreasonably safe condition. Further, the hazard appellant encountered was an inherently dangerous activity necessarily present because of the nature of the work performed. Therefore, the trial court properly granted summary judgment in favor of appellee Central Ohio Asphalt.
 {¶ 64} Accordingly, the November 16, 2004 Judgment Entry of the Knox County Court of Common Pleas is affirmed, in part as to Central Ohio Asphalt, and reversed, in part as to Ron Laymon Trucking.
Hoffman, P.J., Wise, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the November 16, 2004 Judgment Entry of the Knox County Court of Common Pleas is affirmed, in part, and reversed, in part and remanded to the trial court for further proceedings in accordance with our Opinion and the law. Costs to be divided between appellant and appellee Ron Laymon Trucking.