JOURNAL ENTRY and OPINION
{¶ 1} Defendants-appellants Northcoast Concrete ("Northcoast") and Martin Enterprises, Inc. ("Martin") present this consolidated appeal from a jury verdict for $325,000 in favor of plaintiff-appellee Carl Green. We find no merit to the appeal and affirm the trial court's judgment.
 {¶ 2} On April 26, 2000, plaintiff-appellee Carl Green filed suit against Krill Company, Inc. ("Krill") and Northcoast, seeking compensation for injuries he sustained when he tipped over his cement mixer truck while delivering concrete to a construction site at the Homewood Retirement Center located near Mayfield and Lee Roads in Cleveland Heights, Ohio.[1]
 {¶ 3} After denying motions for summary judgment filed by Northcoast and Martin, the matter proceeded to a jury trial. The following evidence was presented.
 {¶ 4} On August 14, 1998, Green, who worked for Collinwood Shale and Brick Supply Company, drove his cement truck, weighing approximately 40,000 pounds, to Northcoast's construction site. Krill Company, Inc. was the general contractor at the site and Northcoast was the subcontractor responsible for the cement work. Martin, Inc. was the subcontractor responsible for excavating and grading the area at the construction site.
 {¶ 5} Green was the second cement truck to make a delivery that day, as his co-worker, Mark Gabbard had successfully delivered cement moments earlier. Gabbard testified that when he was directed to back up on the ramp, the ramp seemed unsafe because he felt the truck was going to tip. He therefore refused to go up the ramp and was directed to use a different path.
 {¶ 6} When Green arrived on the site, Northcoast worker Brian Sigmund directed Green's truck to the discharge area, which consisted of an incline leading to a footer area, the same area where Gabbard had refused to back up. Loose dirt was visible on the left side of the incline. Green backed his eight-foot wide truck up the incline, without first inspecting the area. The Northcoast worker directed him with hand signals. Green successfully backed up to the footers, but then had to go down and back up again with the chute on because he did not leave enough room for the chute the first time. According to Green, when he backed up the second time, he felt the ground "sinking" under the rear left side of the truck and felt the driver's side of the truck start sliding. Green panicked and shifted his truck into maximum torque low-low gear and pulled forward in an attempt to get the truck on solid ground. After he pulled forward, Green could feel the truck begin tipping and turned his wheels to the right and off the incline in an attempt to right the truck, which then tipped over.
 {¶ 7} After crawling out of the truck, Green appeared unhurt and refused medical treatment. However, later that day, he began feeling symptoms of strain in his upper body.
 {¶ 8} Dr. Zaidi testified that Green went to the emergency room on the date of the accident, complaining of left shoulder stiffness and pain and numbness in the left hand. These were the same symptoms he reported to Dr. Zaidi when he came for treatment a month later. The pain shooting up his arm to his shoulder interfered with Green's sleep and his ability to do work outside the home. An X-ray and CT myelogram revealed that Green had an ulnar nerve entrapment at the elbow of both arms and a possibility of a superimposed injury to the bracheial plexus nerves in his neck to his arm. According to Zaidi, these were pre-existing injuries which were aggravated by the accident. An MRI also indicated significant degenerative arthritis in several discs.
 {¶ 9} Dr. Zaidi recommended physical therapy and epidural injections to relieve the pain. Green was unable to work for two years due to the pain. At the time of trial, he was working full-time but still had pain and, according to the doctor, will continue to experience pain in the future. According to Dr. Zaidi, if the therapy and epidural injections do not provide Green relief, surgical intervention would be needed.
 {¶ 10} Curt Schatschneider, the concrete superintendent for Northcoast, stated that prior to the arrival of the cement trucks, Northcoast was digging footers in the area of the incline and the excess soil was thrown in the area of the incline. According to Schatschneider, a Northcoast employee was directed to drag the area for loose clumps. Schatschneider testified that Green backed into the loose dirt area. Schatschneider also saw evidence that the ground gave way in this area.
 {¶ 11} Anthony Salvatore, who was previously employed by Martin, Inc., testified that Martin had graded the area a few weeks prior to the accident, but that Northcoast was responsible for removing the excess soil caused by digging the footers.
 {¶ 12} Northcoast employee Sam Liotta testified that the incline was not a natural grade but was a created ground "elevation." He admitted that Northcoast had a duty to assure safe access for cement delivery.
 {¶ 13} Robert Dalrymple, president of Northcoast, testified that he was not at the site at the time of the accident. He agreed with Schatschneider that the accident was due to loose dirt in the area of the incline.
 {¶ 14} Dan Collins, an engineer with PSI, a soil compilation and testing company for structural areas, testified that the area was not a natural incline but was created by Martin two weeks prior to the accident.
 {¶ 15} Green's expert, Anthony Rago, testified that the creator of the incline had a duty to make sure that the ramp was solid and safe and that the area should have been proof-rolled to assure the safety of heavy machinery. Rago concluded that the incline was too narrow for the eight-foot wide truck and that earthen berms should have been placed on the sides so that the truck driver stayed inside the area. Rago also testified that Northcoast was responsible for making sure there was a safe route for the delivery of the cement. Finally, Rago concluded that the excess loose soil that was cast in the area from the footers could have contributed to the roll-over if it was not tapped down. According to Rago, the ground began to give way in the area of the footer excavation.
 {¶ 16} William Stipe, vice president of Collinwood, testified that the accident was completely attributed to Green's panicking and driving off the incline, but agreed that Northcoast was responsible to assure the site was safe for the delivery of the cement.
 {¶ 17} John C. Glennon, the defense expert, testified that when Green placed the truck in low-low torque in an effort to move forward, it caused a quick acceleration and could have caused the tires to break traction on the loose dirt. He believed that Green's turning the truck towards the right, with the drum rolling, caused the truck to tip over. According to Glennon, the driver of the cement truck is completely responsible for assuring the area is safe and for guiding himself back.
 {¶ 18} Based on the evidence presented, the jury awarded Green $325,000 and found Northcoast to be 85% negligent, Martin 15% negligent, and Green 0% negligent. Subsequent to the verdict, Green filed a motion for prejudgment interest, and Northcoast and Martin both filed motions for judgment notwithstanding the verdict and/or new trial. The trial court denied these post-trial motions. Northcoast and Martin appeal the denial of their motions.
 DENIAL OF NORTHCOAST'S JNOV MOTION {¶ 19} Northcoast argues in its first assignment of error that the trial court erred in denying its motion for judgment notwithstanding the verdict ("jnov") because it did not "actively participate" by directing Green's truck to the discharge point, but merely supervised him; the critical act which caused Green's truck to tip over was Green's independent decision to pull the truck forward and, therefore, Green's action alone was the proximate cause of his injuries; and, since a construction site is an inherently dangerous setting, Green's claim is barred by the doctrine of primary assumption of the risk.
 {¶ 20} In Osler v. Lorain (1986), 28 Ohio St.3d 345, 347, the Ohio Supreme Court held, "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied."
 {¶ 21} In applying this standard to the instant case, we find no merit to Northcoast's argument that the trial court erred in denying its jnov motion.
 {¶ 22} In Wellman v. E. Ohio Gas Co. (1953), 160 Ohio St. 103, the Ohio Supreme Court held that one who employs an independent contractor is not liable for injuries sustained by the independent contractor's employees. However, in Hirschbach v. Cincinnati Gas Electric Co. (1983), 6 Ohio St.3d 206, the Ohio Supreme Court carved out the following exception to the general rule: "[O]ne who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor."
 {¶ 23} The Ohio Supreme Court in Sopkovich v. Ohio Edison Co. (1988), 81 Ohio St.3d 628, 642-643, defined "active participation" as follows: "As is clear from Hirschbach, and from cases preceding and postdating Hirschbach (see, e.g., Schwarz and Michaels), a property owner's retention of possession and control over the work area of an independent contractor's employees has always been an integral part of the active-participation analysis, where, as here, the owner's liability is at issue. Moreover, as is evident from a careful review of the foregoing authorities, active participation giving rise to a duty of care may be found to exist where a property owner either directs or exercises control over the work activities of the independent contractor's employees, or where the owner retains or exercises control over a critical variable in the workplace."
 {¶ 24} This court in Strother v. Novak Sons (July 27, 2000), Cuyahoga No. 76306, 76385, held that this principle of law not only applies to property owners, but also applies to situations where an independent contractor hires another independent contractor to perform services, like the situation in the instant case. Therefore, if Northcoast had control over a "critical variable in the workplace" it could be found to have "actively participated" in changing the area of the incline by casting excess soil in this area.
 {¶ 25} The evidence at trial indicated that Northcoast dug 100 footers and cast the excess soil from digging these footers into the area of the incline. Several witnesses testified that Green's truck backed up into the loose soil area, causing him to attempt to drive the truck forward and onto safer ground. The loose soil strewn in this area of the incline was a "critical variable in the workplace." Although other witnesses denied that Green entered the area of the loose soil, construing the evidence in Green's favor, as we are required to do, we find sufficient evidence to support the conclusion that Northcoast "actively participated."
 {¶ 26} Furthermore, the record contains sufficient evidence that Green was directed into the area by the spotter, Brian Sigmund, a Northcoast employee. Although Northcoast cites Hunter v. MentalRetardation Bd. (Feb. 15, 1996), Tenth Dist. No. 95API09-1184, in support of its argument that merely guiding a truck up a ramp does not constitute "actively participating," we disagree with the legal conclusion in that case. We find that directing and guiding a truck in backing up an incline constitutes more than supervisory activity, because in such a situation, a truck driver is at the mercy of his spotter due to his compromised ability to see behind the truck. Furthermore, in the instant case, there was evidence that Green was directed into the area of the loose soil by a Northcoast employee, which necessitated Green's attempt to place the truck in a safer spot. In Hunter, after being guided to the dump site, the truck driver had the ability to stop the truck and to ascertain he was in a good spot before proceeding to dump the load of salt.
 {¶ 27} Even if we agreed with Hunter, Northcoast's dumping the footer soil in the area of the incline was sufficient evidence to support a finding that it "actively participated" in the job operation.
 {¶ 28} Accordingly, we find sufficient evidence that Northcoast's actions constitute a partial proximate cause of the accident because, but for the loose soil, Green would not have needed to attempt to right the truck.
 {¶ 29} We also find that the doctrine of primary assumption of the risk does not apply to the facts of this case. The doctrine of primary assumption of the risk supposes that the defendant owes no duty to the injured plaintiff. Gallagher v. Cleveland Browns (1996), 74 Ohio St.3d 427,431. Although a construction site has been held to be an inherently dangerous setting, Bond v. Howard Corp. (1995), 72 Ohio St.3d 332, 336, a duty would still be owed to Green if Northcoast "actively participated" in the job operation. Hirschbach, supra. As we found above, Northcoast did "actively participate" in the delivery of the cement by altering the conditions of the incline and by directing Green in backing up the incline. Primary assumption of the risk is therefore inapplicable.
 {¶ 30} Northcoast's first assignment of error is overruled.
 II. FAILURE TO INSTRUCT ON PRIMARY ASSUMPTION OF THE RISK {¶ 31} Northcoast contends in its second assignment of error that the trial court erred in failing to instruct on the doctrine of primary assumption of the risk because both the testimony and Ohio case law indicate that a construction site is an inherently dangerous setting.
 {¶ 32} As we held above, the doctrine of primary assumption of the risk supposes that no duty is owed to the plaintiff. Although a construction site has been held to be an inherently dangerous setting, a contractor still owes a duty to the subcontractor if it actively engaged in the job operation. Hirschbach, supra. Because there was evidence that Northcoast actively engaged in the job operation, the trial court's refusal to instruct the jury on primary assumption of the risk was not error.
 {¶ 33} Northcoast's second assignment of error is overruled.
 III. DENIAL OF NORTHCOAST'S MOTION FOR A NEW TRIAL {¶ 34} Northcoast contends in its third assignment of error that the trial court erred in denying its motion for a new trial because the jury's verdict was against the manifest weight of the evidence. According to Northcoast, the evidence was undisputed that the truck did not begin to tip over until Green pulled the truck forward. Northcoast also contends that a new trial was warranted because pursuant to Civ.R. 59(A)(4), the jury's verdict was excessive, indicating the jury award was based on passion and prejudice.
 {¶ 35} The granting or denial of a motion for a new trial pursuant to Civ.R. 59(A) is committed to the sound discretion of the trial court and will not be reversed upon appeal absent an abuse of discretion. Rohdev. Farmer (1970), 23 Ohio St.2d 82, 91. The term abuse of discretion connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. Rohde at 87.
 {¶ 36} A new trial based on the weight of the evidence is not warranted where the judgment is supported by substantial, competent and credible evidence. Dillon v. Bundy (1991), 72 Ohio App.3d 767, 773-774. In the instant case, the evidence supports the jury's finding Northcoast liable because the testimony indicated that Northcoast cast the excess soil from the footers into the area of the incline and that a Northcoast employee directed Green into the area of the loose soil.
 {¶ 37} We also fail to find that the damages awarded by the jury were the result of passion or prejudice. As the court stated in Shimolav. Cleveland (1992), 89 Ohio App.3d 505, 514, "An appellate court cannot disturb a jury's assessment of damages unless the award lacks support from any competent, credible evidence or resulted from passion or prejudice. Baum v. Augenstein (1983), 10 Ohio App.3d 106, 10 Ohio B. Rep. 129, 460 N.E.2d 701. Whether a jury's award should be set aside requires a review of the record to determine if the `damages * * * were induced by (a) admission of incompetent evidence, or (b) misconduct on the part of the court or counsel, or (c) whether the record discloses any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in its determination of the amount of damages that should be awarded.' Loudy v. Faries (1985), 22 Ohio App.3d 17,19, 22 Ohio B. Rep. 52, 54, 488 N.E.2d 235, 237, quoting Hughes v.Laurence (Nov. 12, 1981), Summit App. No. 10211, unreported, at 3-4."
 {¶ 38} Passion and prejudice is also not proved by the mere size of a verdict. Sindell v. Toledo Edison Co. (1993), 87 Ohio App.3d 525,532. Further, "It must appear that the jury's assessment of damages was so disproportionate as to shock reasonable sensibilities." Id.
 {¶ 39} We do not find any evidence of attorney misconduct, improper admission of evidence, improper instructions or other activities that would have impassioned or prejudiced the jury, nor do we find that the jury's assessment of the damages was so disproportionate as to shock reasonable sensibilities. The evidence presented indicated that Green was unable to work for two years due to the accident's exacerbation of his prior injuries. The doctor opined that Green would continue to suffer future pain and that surgical intervention might be needed. Given this evidence, the $325,000 award was not unreasonable.
 {¶ 40} Northcoast's third assignment of error is overruled.
 IV. EXPERT WITNESS TESTIMONY {¶ 41} Northcoast argues in its fourth assignment of error that the trial court erred in admitting the testimony of Green's experts Anthony Rago and Dr. Zaidi.
 {¶ 42} According to Northcoast, because Rago did not visit the accident scene or conduct any testing of the structural stability of the incline, the trial court should have excluded his testimony pursuant to Evid.R. 702 and 703.
 {¶ 43} The standard of review in determining whether expert testimony is admissible is whether the trial court abused its discretion in permitting the expert witnesses to testify. State v. Williams (1992),80 Ohio App.3d 648.
 {¶ 44} Rago, in developing his expert opinion, looked at photographs of the scene, read deposition testimony of the witnesses, consulted the driver's manual, reviewed PSI's subsurface exploration proposal, and read the accident report to reach his conclusion that Northcoast was partially responsible for the accident. As Rago testified, he did not visit the accident scene because by the time he was consulted, the accident scene had been changed, and therefore a visit to the scene would not have aided him in determining the cause of the accident.
 {¶ 45} Evid.R. 703 provides that, "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."
 {¶ 46} Since the materials relied upon were admitted at trial, Rago's expert testimony was based on proper evidence. See, also McConnellv. Budget Inns of Am. (1998), 129 Ohio App.3d 615 (expert testimony based on photograph of broken chair was in compliance with Evid.R. 703). Although we acknowledge that the depositions were not admitted at trial, the deposition testimony of the witnesses was similar to their testimony at trial. Thus, any error was harmless.
 {¶ 47} Northcoast also claims there was no evidence that it ever built a ramp, which Rago presumes in his analysis. Although Rago used the term "ramp," he also equated it to a man-made incline. Rago also opined that Northcoast was liable because it placed excess soil in the area of the incline and directed Green's truck into the loose soil.
 {¶ 48} Northcoast argues that Dr. Zaidi's opinion should have also been excluded because Green never told the doctor about a prior injury to his shoulder. However, Dr. Zaidi testified that despite Green's failure to inform him of prior injuries, his opinion remained that the prior injuries were exacerbated by the accident. Therefore, Green's failure to fully inform Dr. Zaidi of his prior history had no effect on the doctor's opinion. The trial court, therefore, did not abuse its discretion in permitting Dr. Zaidi to testify.
 {¶ 49} Northcoast's fourth assignment of error is overruled.
 V. DENIAL OF NORTHCOAST'S MOTION FOR SUMMARY JUDGMENT {¶ 50} Northcoast argues in its fifth assignment of error that the trial court erred in denying its motion for summary judgment and motion for reconsideration because Northcoast did not "actively" participate in Green's operation of the truck.
 {¶ 51} We addressed this argument under the first assignment of error. We found sufficient evidence in the record that Northcoast actively participated by altering the incline.
 {¶ 52} Northcoast's fifth assignment of error is overruled.
 VI. EXPERT WITNESS REPORT AND AFFIDAVIT {¶ 53} Northcoast argues in its sixth assignment of error that the trial court erred by not striking Rago's affidavit attached to Green's motion in opposition to Northcoast's motion for summary judgment. Northcoast contends that Rago's statements were not based on personal knowledge and merely stated legal conclusions without supporting facts.
 {¶ 54} The affidavit stated sufficient relevant facts in support of Rago's opinion. The affidavit stated that because Northcoast was responsible for the cement work at the site, it owed a duty of care to assure the safety of the construction site in the area where Green delivered the concrete. Rago also stated that Northcoast exercised and retained control over the manner and means by which the concrete was delivered by Green, and that a Northcoast employee directed Green into the loose soil. These were sufficient facts in support of Rago's conclusion that Northcoast was liable. Rago's affidavit also specifically stated that he reviewed discovery depositions, photographs from the scene, interrogatory answers, and contract documents in rendering his opinion.
 {¶ 55} We find the affidavit is sufficiently supported by facts and that the trial court did not err in failing to strike the affidavit.
 {¶ 56} Northcoast's sixth assignment of error is overruled.
 VII. DENIAL OF MARTIN'S MOTION FOR DIRECTED VERDICT {¶ 57} Martin alleges in its first assignment of error that the trial court erred in denying its motion for directed verdict on Green's negligence claim. Martin maintains that the evidence indicated it did not construct the ramp, was not responsible for the loose soil in the area of the ramp, and did not help direct Green back up the truck. Martin argues, as Northcoast did, that the sole cause of the accident was Green's panicking and pulling the truck forward.
 {¶ 58} The applicable standard of review for a directed verdict is set forth in Civ.R. 50(A)(4), which provides: "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 59} This rule requires the trial court to give the non-moving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v. Winland (1994), 68 Ohio St.3d 521, 526. When determining a motion for a directed verdict, the trial court must submit an essential issue to the jury if there is sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue.Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285.
 {¶ 60} Although a motion for a directed verdict requires a trial court to review and consider the evidence, the motion does not present a question of fact or raise factual issues. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. Id. at 68-69. A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment.Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13.
 {¶ 61} Although some witnesses testified that Martin had nothing to do with the grading of the accident area, several witnesses testified that Martin had graded the area two weeks prior to the accident. Anthony Salvatore, a Martin employee at the time of the accident, testified that Martin constructed the grade in the area a few weeks prior to the accident. Although there is a variation in terminology in describing the area, i.e. ramp or incline, all witnesses testified about the elevated area shown in the photographs.
 {¶ 62} Daniel Collins, an engineer for PSI, the company responsible for soil compaction and testing in structural areas, testified that the grade was not natural, but was in fact created by Martin.
 {¶ 63} According to Green's expert, the elevated area was not wide enough to accommodate the truck, and the creator of the incline had a duty to assure it was safe. Although a defense expert testified that the ramp was wide enough, due to the conflict in expert opinion, the trial court correctly submitted the matter to the jury.
 {¶ 64} Therefore, although we agree that Martin had nothing to do with backing up the truck or creating the loose soil from the footers, there was evidence it was partially responsible by virtue of the fact it graded the area of the incline.
 {¶ 65} This assignment of error is overruled.
 VIII. DENIAL OF MARTIN'S MOTION FOR A NEW TRIAL {¶ 66} Martin contends in its second assignment of error that the trial court erred in denying its motion for a new trial because the jury's verdict was against the manifest weight of the evidence, there being no evidence of Martin's negligence.
 {¶ 67} The granting or denial of a motion for a new trial pursuant to Civ.R. 59(A) is committed to the sound discretion of the trial court and will not be reversed upon appeal absent an abuse of discretion. Rohdev. Farmer, supra.
 {¶ 68} As we found in addressing Martin's first assignment of error, there was sufficient evidence of Martin's negligence in constructing the elevated area. Therefore, a new trial was properly denied by the trial court.
 {¶ 69} Martin's second assignment of error is overruled.
 IX. SAFETY EXPERT NOT QUALIFIED PURSUANT TO EVID.R. 702 {¶ 70} Martin argues in its third assignment of error that the trial court erred in denying Martin's motion in limine to exclude the testimony of Green's safety expert, Anthony Rago. According to Martin, because Rago did not personally inspect the site or conduct soil testing, his opinion was mere speculation.
 {¶ 71} We addressed this same argument in overruling Northcoast's fourth assignment of error and, therefore, find no merit to Martin's third assignment of error.
 X. MEDICAL EXPERT NOT QUALIFIED PURSUANT TO EVID.R. 702 {¶ 72} Martin argues in its fourth assignment of error that the trial court erred by permitting Dr. Zaidi to testify as to the causation of Green's injuries because Dr. Zaidi failed to speak with Green's prior physicians or review Green's prior medical records. Martin also claims that Dr. Zaidi did not base his opinion in his deposition on the reasonable degree of certainty standard required for a medical opinion.
 {¶ 73} As we discussed in Northcoast's sixth assignment of error, Dr. Zaidi testified that the fact that Green failed to inform him of his entire medical history did not change his opinion that the accident exacerbated Green's prior injuries. He based this opinion on a reasonable degree of medical certainty.
 {¶ 74} Martin's fourth assignment of error is overruled.
 {¶ 75} Judgment as to both Northcoast and Martin is affirmed.
It is ordered that appellee recover of appellants his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J. and MICHAEL J. CORRIGAN, J. CONCUR
[1] Green amended his complaint on August 10, 2000 and named additional defendants Martin, DJ Structural Contracting, Sam Liotta, and Professional Services, Inc. (PSI). Green subsequently dismissed PSI, Liotta, DJ Structural Contracting, and Krill.